■ THERESA FLANAGAN et al., Respondents, v CATSKILL REGIONAL MEDICAL CENTER et al., Appellants, et al., Defendants. [884 NYS2d 131]—

In a consolidated action, inter alia, to recover damages for medical malpractice and lack of informed consent, the defendants Emergency Medical Association of New York, P.C., and James Dwyer appeal, and the defendant Catskill Regional Medical Center separately appeals, as limited by their respective briefs, from so much of an order of the Supreme Court, Westchester County (Loehr, J.), entered January 10, 2008, as denied their separate motions for summary judgment dismissing the complaint insofar as asserted against each of them.

Ordered that the order is reversed insofar as appealed from, on the law, with one bill of costs to the appellants appearing separately and filing separate briefs, and the appellants' motions for summary judgment dismissing the complaint insofar as asserted against each of them are granted.

On September 1, 2004 the infant plaintiff Brian Flanagan (hereinafter Brian), then 16 years old, was taken to the emergency room at the defendant Catskill Regional Medical Center (hereinafter CRMC) after colliding with another player during football practice. Upon his arrival at CRMC, Brian was unable to speak. Ambulance personnel reported that he had suffered a helmet-to-helmet collision. Additionally, the defendant James Dwyer, an emergency room physician employed by the defendant Emergency Medical Association of New York, P.C. (hereinafter EMA), observed that Brian had a forehead hematoma.

Brian was registered at CRMC at 1:55 P.M., and was triaged at 2:07 P.M. Between 2:15 P.M. and 4:10 P.M., Dwyer sedated and intubated Brian, and ordered a battery of tests including blood work, X rays, several CT scans, and a Doppler sonogram. The test results did not allow for a clear diagnosis. At 4:25 P.M., Dwyer arranged for Brian to be airlifted to Westchester County Medical Center (hereinafter WCMC). He obtained the consent of Brian's father to the transfer.

Hours after the plaintiff's arrival at WCMC, an angiogram was performed, and it was conclusively determined that Brian had suffered a stroke. Brian's family initially was told that his condition was fatal. On the afternoon of September 2, 2004, however, a physician at WCMC administered a thrombolytic drug called tissue plasminogen activator (hereinafter TPA) to Brian, and he awoke from a coma about two weeks later.

Theresa Flanagan, Brian's mother, commenced this action against EMA and Dwyer (hereinafter together the EMA defendants), CRMC (hereinafter, together with the EMA defendants, the appellants) as well as WCMC and Westchester County Health Care Corp. on behalf of Brian, interposing causes of action alleging medical malpractice, negligent hiring and supervision, and lack of informed consent. Brian's mother also interposed a derivative cause of action. The gravamen of the complaint against the appellants is that TPA should have been administered to Brian while he was at CRMC. The EMA defendants and CRMC separately moved for summary judgment dismissing the complaint insofar as asserted against each of them, and the Supreme Court denied the motions. We reverse the order insofar as appealed from.

"The requisite elements of proof in a medical malpractice action are a deviation or departure from accepted community standards of practice and evidence that such departure was a proximate cause of injury or damage" (*Geffner v North Shore Univ. Hosp.*, 57 AD3d 839, 842 [2008]; *see Deadwyler v North Shore Univ. Hosp. at Plainview*, 55 AD3d 780, 781 [2008]). "On a motion for summary judgment, a defendant doctor has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby. In opposition, the plaintiff must submit a physician's affidavit attesting to the defendant's departure from accepted practice, which departure was a competent producing cause of the injury. General allegations that are conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice are insufficient to defeat summary judgment" (*Rebozo v Wilen*, 41 AD3d 457, 458 [2007] [citations omitted]; *see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324-325 [1986]; *Sheenan-Conrades v Winifred Masterson Burke Rehabilitation Hosp.*, 51 AD3d 769, 770 [2008]; *Thompson v Orner*, 36 AD3d 791, 792 [2007]; *DiMitri v Monsouri*, 302 AD2d 420, 421 [2003]).

In support of their motion for summary judgment, the EMA defendants submitted an expert's affirmation, as well as extensive medical records and deposition testimony, which established that Brian did not exhibit the full constellation of stroke symptoms while at CRMC, and that even if he had suffered a stroke, the fact that he had possibly suffered a head injury precluded the administration of TPA due to TPA's potential serious side effects. Based on this evidence, the EMA defendants' expert concluded that Dwyer's actions or inactions did not deviate from accepted standards of care and did not

proximately cause Brian's injury. The EMA defendants, therefore, satisfied their initial burden with respect to the cause of action alleging medical malpractice.

In opposition, the plaintiffs submitted the affirmations of two unnamed experts. Those affirmations, however, were speculative and did not address several key assertions made by the EMA defendants' expert. Accordingly, the plaintiffs failed to raise a triable issue of fact regarding the standard of care sufficient to defeat the EMA defendants' motion for summary judgment with respect to the cause of action alleging medical malpractice.

CRMC also was entitled to summary judgment dismissing the cause of action alleging medical malpractice insofar as asserted against it. Inasmuch as Dwyer was not negligent, there is no basis for holding CRMC vicariously liable. To the extent that the plaintiffs suggest that CRMC is liable for its own alleged negligence because it failed to have certain medical specialists on hand when Brian was a patient at CRMC, Dwyer testified, at his deposition, that CRMC is not a designated trauma center. Therefore, he explained, CRMC is not staffed by certain specialists on a 24-hour basis.

In opposition, the plaintiffs relied upon certain language from CRMC's 2007 Web site. Brian's accident, however, occurred in 2004 and his mother's claim that an unidentified member of the nursing staff told her at an unspecified time that the 2007 Web site contains language similar to the 2004 Web site was insufficient to defeat the granting of the motion for summary judgment (*see generally Chalu v Hariraj*, 304 AD2d 515, 516 [2003]; *Crossland Sav., FSB v Manas*, 153 AD2d 922, 923 [1989]).

The appellants also were entitled to summary judgment dismissing the causes of action alleging negligent hiring and negligent supervision. Dwyer submitted evidence that his credentials were adequate for hiring purposes, and the plaintiffs failed to rebut this evidence. Moreover, the record is devoid of evidence that any of the appellants knew or should have known that an employee had displayed a propensity for the conduct which allegedly caused the injury, a prerequisite to sustaining a cause of action alleging negligent hiring or supervision (*see Kenneth R. v Roman Catholic Diocese of Brooklyn*, 229 AD2d 159, 161 [1997], *cert denied* 522 US 967 [1997]).

Regarding the cause of action alleging lack of informed consent, the record reflects that Brian's father, who is not a party to this lawsuit, consented to the transfer of his son from CRMC to WCMC. Moreover, the plaintiffs admit in their bill of particulars that they are not alleging an affirmative violation of

Brian's physical integrity, an essential element of this cause of action (*see Smith v Fields*, 268 AD2d 579, 580 [2000]; *Campea v Mitra*, 267 AD2d 190, 191 [1999]; *Schel v Roth*, 242 AD2d 697, 698 [1997]). Accordingly, the appellants were entitled to summary judgment dismissing the cause of action alleging lack of informed consent insofar as asserted against each of them.

Since Brian's causes of action are not viable, the mother's derivative causes of action cannot be sustained insofar as asserted against the appellants (*see Lustenring v 98-100 Realty*, 1 AD3d 574, 577 [2003]; *Shay v Jerkins*, 263 AD2d 475, 476 [1999]; *Cabri v Myung-Soo Park*, 260 AD2d 525, 526 [1999]).

In light of the foregoing determinations, we need not address the appellants' remaining contention. The plaintiffs' remaining contentions are without merit. Rivera, J.P., Santucci, Chambers and Hall, JJ., concur.