■ MARIA DeCHICO, Respondent, v NORTHERN WESTCHESTER HOSPITAL CENTER et al., Appellants. [900 NYS2d 743]—

In an action to recover damages for medical malpractice, etc., the defendants Northern Westchester Hospital Center and Francene Gallousis appeal, and the defendants Women's Medi-

cal Association, PLLC, Ruth Tessler, and Annette Maffei separately appeal from an order of the Supreme Court, Westchester County (Loehr, J.), entered March 11, 2009, which denied their respective motions for summary judgment dismissing the complaint insofar as asserted against them.

Ordered that the order is reversed, on the law, with one bill of costs to the defendants appearing separately and filing separate briefs, and the respective motions of the defendants Northern Westchester Hospital Center and Francene Gallousis, and the defendants Women's Medical Association, PLLC, Ruth Tessler, and Annette Maffei for summary judgment dismissing the complaint insofar as asserted against them are granted.

The plaintiff, Maria DeChico (hereinafter the mother), is the mother of a child, Gianluca DeChico (hereinafter the child), who was born on June 24, 2004. During her pregnancy with the child, the mother received pre-natal care from the defendants Ruth Tessler and Annette Maffei, obstetricians-gynecologists associated with the defendant Women's Medical Association, PLLC (hereinafter the Medical Association). At approximately the 28th week of the pregnancy, an ultrasound revealed a dilated ventricle in the brain of the fetus. Dr. Tessler referred the mother for a more detailed ultrasound to be performed by the defendant Francene Gallousis, an obstetrician-gynecologist and specialist in maternal fetal medicine at the defendant Northern Westchester Hospital Center. Dr. Gallousis performed an ultrasound at approximately the 29th week of pregnancy, which indicated the presence of a unilateral ventriculmegaly, a swelling or defect of one side of the ventricle of the brain. Dr. Gallousis subsequently performed further ultrasounds, which confirmed that finding. She also referred the mother to a perinatologist to discuss the care that the child would require after the birth. The mother continued to receive care from Tessler, Maffei, and other physicians at the Medical Association throughout the pregnancy and delivery. After birth, the child was diagnosed with schizencephaly, a rare and severe congenital brain defect.

The mother, individually and on behalf of the child, commenced this action, inter alia, to recover damages for the extraordinary costs of the child's medical care. The mother alleged, among other things, that the defendants had departed from the applicable standard of care in failing to fully advise her of the significance of the ultrasound findings, failing to order further tests, including a fetal MRI, and failing to advise her regarding possible termination of the pregnancy. The defendants Northern Westchester Hospital Center and Francene

Gallousis moved, and the defendants Medical Association, Ruth Tessler, and Annette Maffei separately moved, for summary judgment dismissing the complaint insofar as asserted against them.

The Supreme Court erred in denying the defendants' respective motions for summary judgment dismissing the complaint insofar as asserted against them. "[I]t is well settled that no cause of action may be maintained on behalf of an infant plaintiff for 'wrongful life,' i.e., that he or she would never have been born but for the negligence of the defendant" (*Spano v Bertocci*, 299 AD2d 335, 337 [2002], quoting *Alquijay v St. Luke's-Roosevelt Hosp. Ctr.*, 63 NY2d 978, 979 [1984]; *see Becker v Schwartz*, 46 NY2d 401 [1978]). Accordingly, the Supreme Court should have awarded summary judgment dismissing so much of the complaint as sought to assert a wrongful life cause of action on behalf of the child (*see Becker v Schwartz*, 46 NY2d at 401).

Although a child may not maintain a wrongful life cause of action, a parent may, under some circumstances, maintain a cause of action on his or her own behalf for the extraordinary costs incurred in raising a child with a disability (*see Becker v Schwartz*, 46 NY2d at 411-412). In order to succeed on such a cause of action, which "sound[s] essentially in negligence or medical malpractice," a "plaintiff must demonstrate the existence of a duty, the breach of which may be considered the proximate cause of the damages suffered by the injured party" (*Becker v Schwartz*, 46 NY2d at 410). Specifically, the plaintiff must establish that malpractice by a physician deprived the parent of the opportunity to terminate the pregnancy within the legally permissible time period or that the child would not have been conceived but for the defendants' malpractice (*see Becker v Schwartz*, 46 NY2d at 410).

Here, the evidence established, as a matter of law, that any negligence on the part of the defendants did not proximately cause the complained-of damages. The affidavits submitted by the parties' various experts contained differing opinions as to, inter alia, whether additional tests should have been performed after the April 21, 2004, ultrasound revealed the presence of a dilated ventricle of the fetal brain. The mother did not allege that any affirmative action or inaction by the defendants caused or exacerbated the condition of the fetus. In addition, the mother did not submit any evidence, and her expert physicians, an obstetrician-gynecologist and a radiologist, did not opine, that any further tests should have been performed prior to April 21, 2004. Rather, her complaint is based solely upon the defend-

ants' alleged failure to perform further tests and to render appropriate advice after the April 21, 2004, ultrasound. It is undisputed that at the time of the April 21, 2004, ultrasound, the gestation period was 27 weeks and six days, plus or minus 18 days (i.e. at least 25 weeks). Pursuant to Penal Law § 125.05, it is unlawful for a physician, pregnant woman, or other person to terminate a pregnancy after the twenty-fourth week of gestation, unless necessary to preserve the life of the mother. Here, the mother did not allege, nor is there any evidence, that her life was jeopardized by the continuation of the pregnancy. Therefore, any negligence by the defendants in connection with treatment, testing, or advice after the April 21, 2004, ultrasound cannot be said to have proximately caused the complained-of injuries, namely, the continuation of the pregnancy and birth of the child (*see Becker v Schwartz*, 46 NY2d at 410; *Spano v Bertocci*, 299 AD2d at 337).

The mother's expert affidavits failed to raise a triable issue of fact as to whether the defendant physicians had a duty to advise the mother as to the legality of late-term pregnancy termination in states other than New York (*see generally Langan v St. Vincent's Hosp. of N.Y.*, 64 AD3d 632 [2009]). Moreover, contrary to the mother's contention, the instant action does not involve the deprivation of a federal constitutional right (*see generally Planned Parenthood of Southeastern Pa. v Casey*, 505 US 833, 846 [1992]). Under these circumstances, the Supreme Court should have awarded summary judgment dismissing the cause of action asserted individually by the mother to recover the child's extraordinary medical costs.

The complaint also asserted a cause of action based on lack of informed consent. Pursuant to Public Health Law § 2805-d (2), the "right of action to recover for medical . . . malpractice based on lack of informed consent is limited to those cases involving either (a) non-emergency treatment, procedure or surgery, or (b) a diagnostic procedure which involved invasion or disruption of the integrity of the body." Here, the mother did not allege that the defendants failed to obtain her informed consent in connection with the performance of any affirmative treatment or testing involving a violation of her physical integrity. Consequently, the defendants established their prima facie entitlement to judgment as a matter of law with respect to the cause of action based on lack of informed consent, and the mother failed to raise a triable issue of fact in opposition thereto (*see* Public Health Law § 2805-d; *Flanagan v Catskill Regional Med. Ctr.*, 65 AD3d 563, 566-567 [2009]; *Schel v Roth*, 242 AD2d 697 [1997]). Therefore, the Supreme Court should have granted

the defendants' respective motions for summary judgment dismissing the complaint insofar as asserted against them. Rivera, J.P., Florio, Miller and Austin, JJ., concur.