Spain, J.
Appeals (1) from an order of the Supreme Court (Hummel, J.), entered June 27, 2011 in Columbia County, which granted defendants’ motions for summary judgment dismissing the complaint, and (2) from the judgment entered thereon.
Plaintiff Edward Heifer (hereinafter plaintiff) began experiencing symptoms that included dizziness, neck pain, headache and nausea while at home at approximately 8:34 a.m. on Saturday, December 13, 2003. The 55-year-old plaintiff was thereafter transported by ambulance to the emergency room at defendant Columbia Memorial Hospital (hereinafter CMH), where he arrived at approximately 9:34 a.m. Shortly after arrival, plaintiff was examined by defendant Norman A. Chapin, the emergency department director, who formed an initial diagnosis that included possible stroke, possible peripheral vertigo and possible vertebral artery dissection (hereinafter VAD) — a tear in the wall of one of the arteries in the back of the neck — and ordered, among other things, a CT scan. Plaintiffs CT scan was not performed until approximately 11:40 a.m:. and Chapin reviewed the results at 12:57 p.m., which he interpreted as normal with no sign of acute stroke or hemorrhage. Thereafter, at 1:09 p.m., Chapin transferred the care of plaintiff to defend *1271 ant Kenneth Schnide, a physician employed by CMH. In his capacity as a hospitalist, Schnide conducted an initial assessment of plaintiff between 1:45 p.m. and 2:45 p.m. and ordered an MRI and a neurological consultation. At approximately 5:00 p.m., a neurologist examined plaintiff and concurred in a differential diagnosis that included a possible VAD, as well as a course of treatment that included the MRI, which could not be performed locally until Monday.
The following day, upon reexamination by the neurologist, it was determined that plaintiff’s condition had worsened overnight and arrangements were made to transport him to Albany Medical Center. After transfer, plaintiff was found to have suffered a cerebellar stroke; thereafter, he suffered intracranial hemorrhage apparently following complications from the placement of a ventriculostomy catheter. Plaintiff’s condition required a lengthy hospital stay and he was later transferred to a rehabilitation center. As a result of the incident, plaintiff suffered lasting neurological deficits.
In May 2006, plaintiff and his wife, derivatively, commenced this medical malpractice action against, as relevant to this appeal, Chapin, Schnide, CMH and Columbia Emergency Services, PC., as Chapin’s employer. The gravamen of plaintiffs’ action is that Chapin committed malpractice by failing to timely administer tissue plasminogen activator (hereinafter TPA), a medication used to dissolve blood clots in patients suffering from certain types of strokes, but which can be dangerous if a patient’s condition includes bleeding. Plaintiffs contend that the use of TPA, which must be administered within three hours of the onset of stroke symptoms, would have had the potential to reduce or eliminate plaintiffs neurological deficits. Following joinder of issue and discovery, defendants moved for summary judgment. Supreme Court granted the motions and dismissed the complaint as to all defendants. Plaintiffs appeal and we now affirm.*
As the proponent of summary judgment in a medical malpractice action, a defendant bears the initial burden of demonstrating that the medical treatment rendered was within acceptable standards of care or that his or her actions did not cause the claimed injuries (see Derusha v Sellig, 92 AD3d 1193, 1193-1194 [2012]; Maki v Bassett Healthcare, 85 AD3d 1366, 1368 [2011], *1272 appeal dismissed 17 NY3d 855 [2011], lv dismissed and denied 18 NY3d 870 [2012]). Once a defendant has met that requirement, the burden shifts to the plaintiff to establish, through competent expert medical opinion evidence, that there exists a triable issue of fact as to whether there was a deviation from the accepted standard of care and whether there exists a causal nexus between that deviation and the plaintiff’s injuries (see Adams v Anderson, 84 AD3d 1522, 1524 [2011]; Plourd v Sidoti, 69 AD3d 1038, 1039 [2010]; Bell v Ellis Hosp., 50 AD3d 1240, 1241 [2008]).
Here, defendants established through expert testimony that the use of TPA is contraindicated in any instance in which a VAD is part of the differential diagnosis because of the significant risk of excessive bleeding, likely causing death. Therefore, defendants met their initial burden of demonstrating that the treatment of plaintiff was within the acceptable standards of care.
In response, plaintiffs presented no evidence that would support a contrary conclusion. A possible VAD was included in the initial diagnosis, continued to be part of the differential diagnosis by the neurologist and, notably, was still included in the differential diagnosis upon plaintiffs release from Albany Medical Center one month later. Plaintiffs failed to demonstrate any error in this diagnosis or to raise a question of fact as to whether TPA should have been administered despite the diagnosis of a possible VAD. Plaintiffs rely heavily on a single footnote in the affidavit of their neurology expert suggesting that once the CT scan came back normal, a diagnosis including a possible VAD should not have eliminated treatment with TPA. This general statement, however, lacks sufficient specificity or certainty to create a question of fact as to whether Chapin’s decision not to administer TPA was a deviation from the standard of care. Furthermore, as the evidence established that the use of TPA was absolutely contraindicated with plaintiff’s diagnosis, plaintiffs’ additional contentions regarding Chapin’s care— including his failure to document his reexamination of plaintiff when additional symptoms were reported by a nurse, that the ordered CT scan was not timely performed and read, that a neurological consultation was not timely requested, and that plaintiff was not timely transferred to another facility — are academic.
Inasmuch as plaintiffs have failed to establish liability on the part of Chapin, no vicarious liability lies against CMH or Columbia Emergency Services (see Dumas v Adirondack Med. Ctr., 89 AD3d 1184, 1187 [2011], lv denied 18 NY3d 807 [2012]; *1273 Flanagan v Catskill Regional Med. Ctr., 65 AD3d 563, 566 [2009]). Finally, we reject plaintiffs’ contention that CMH is independently liable by virtue of its 2003 policy with regard to the use of TPA, as Chapin stated unequivocally that he did not rely on such policy in reaching his decision not to administer TPA to plaintiff.
We have examined the remainder of plaintiffs’ contentions and find them to be without merit.
Peters, P.J., Lahtinen, Kavanagh and McCarthy, JJ., concur. Ordered that the order and judgment are affirmed, with one bill of costs.

 Supreme Court granted Schnide’s unopposed motion for summary judgment and, inasmuch as plaintiffs do not challenge that determination in their brief, any issue with respect thereto is deemed abandoned (see Matter of Barnes v Fischer, 93 AD3d 967, 968 [2012]; Matter of McDonald v Board of the Hudson Riv.-Black Riv. Regulating Dist., 86 AD3d 844, 846 [2011]).