In an action to recover damages for medical malpractice, etc., the plaintiffs appeal, as limited by their brief, from (1) so much of an order of the Supreme Court, Nassau County (Ehelan, J.), entered December 6, 2011, as granted those branches of the separate motions of the defendant Dmitriy Burman, the defendant Chinwe Offor, the defendant Mercy Medical Center, and the defendants Marc Behar and Marc Behar, M.D., EC., which were for summary judgment dismissing the medical malpractice cause of action insofar as asserted by the plaintiff James Fritz against each of those defendants, (2) so much of a judgment of the same court dated January 10, 2012, as, upon the order, is in favor of the defendant Mercy Medical Center and against the plaintiffs dismissing the medical malpractice cause of action insofar as asserted by the plaintiff James Fritz against that defendant, and (3) so much of a judgment of the same court dated January 17, 2012, as, upon the order, is in favor of the defendants Marc Behar and Marc S. Behar, M.D., EC., and against the plaintiffs dismissing the medical malpractice cause of action insofar as asserted by the plaintiff James Fritz against those defendants.
Motion by the respondent Mercy Medical Center on appeals, inter alia, from an order of the Supreme Court, Nassau County, entered December 6, 2011, and a judgment of the same court dated January 10, 2012, to dismiss the appeal from that order insofar as taken against it, in effect, on the ground that the right of direct appeal therefrom terminated upon entry of that judgment. By decision and order of this Court dated August 8, 2012, as amended August 28, 2012, among other things, the motion was held in abeyance and referred to the panel of Justices hearing the appeals for determination upon the argument or submission of the appeals.
Upon the papers filed in support of the motion and the papers filed in opposition thereto, and upon the argument of the appeals, it is
*937 Ordered that the motion is granted; and it is further,
Ordered that the appeal from so much of the order as granted those branches of the separate motions of the defendant Mercy Medical Center and the defendants Marc Behar and Marc S. Behar, M.D., EC., which were for summary judgment dismissing the medical malpractice cause of action insofar as asserted by the plaintiff James Fritz against each of them is dismissed; and it is further,
Ordered that the judgments are reversed insofar as appealed from, on the law, those branches of the separate motions of the defendant Mercy Medical Center and the defendants Marc Behar and Marc S. Behar, M.D., EC., which were for summary judgment dismissing the medical malpractice cause of action insofar as asserted by the plaintiff James Fritz against each of them are denied, the medical malpractice cause of action insofar as asserted by that plaintiff against those defendants is reinstated, and the order is modified accordingly; and it is further,
Ordered that the order is reversed insofar as reviewed, on the law, and those branches of the motions of the defendants Dmitriy Burman and Chinwe Offor which were for summary judgment dismissing the medical malpractice cause of action insofar as asserted by the plaintiff James Fritz against each of them is denied; and it is further,
Ordered that one bill of costs is awarded to the plaintiffs, payable by the defendants appearing separately and filing separate briefs.
The appeal from so much of the order as granted those branches of the separate motions of the defendant Mercy Medical Center and the defendants Marc Behar and Marc S. Behar, M.D., EC., which were for summary judgment dismissing the medical malpractice cause of action insofar as asserted by the plaintiff James Fritz against each of them must be dismissed because the right of direct appeal therefrom terminated with the entry of the applicable judgments in the action (see Matter ofAho, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from those portions of the order are brought up for review and have been considered on the appeals from the judgments (see CELE 5501 [a] [1]).
In August 2001, the infant plaintiff, James Fritz, was born with hemolytic disease of the newborn, resulting from an incompatability between his blood and the blood of his mother. The plaintiffs allege that certain departures from accepted standards of care delayed diagnosis and treatment of his condition, and constituted improper treatment of his condition, resulting *938 in brain injury which manifested itself as a pervasive developmental disorder.
The infant plaintiff exhibited some symptoms of fetal distress as early as July 29, 2001, when his mother was admitted to the defendant Mercy Medical Center (hereinafter Mercy) with a diagnosis of “decreased fetal movement.” On August 12, 2001, the mother returned to Mercy, again complaining of lack of fetal movement, with signs of an abnormal fetal heart rate. The defendant physician Marc Behar prescribed Cervidil to induce labor. At 8:33 p.m., Mercy’s laboratory logged in a blood sample from the mother, but the results of the test, which identified the “E” antibody which was causing the infant plaintiffs abnormal blood condition, allegedly were not available until the following morning.
At 9:46 p.m., Behar performed a nonemergency caesarean section. The infant plaintiff was born in a critical life-threatening condition, with no respiratory effort, and a heart rate of 60-to-80 beats per minute. The defendant physician Dmitriy Burman resuscitated the infant, inserting an endotracheal tube, which was removed when the infant purportedly cried. However, in the neonatal intensive care unit, the infant plaintiffs respirations became shallow. Burman attempted to re-intubate the infant twice, but his efforts were unsuccessful. An anesthesiologist was able to successfully re-intubate the infant at 10:35 p.m.
At 11:00 p.m., the infant plaintiff suffered a temporary suspension of breathing, and at 11:10 p.m., the infant plaintiff suffered “seizure like movements ... in the extremities” for which phenobarbital was administered. The defendant physician Chinwe Offor examined the infant plaintiff at approximately 11:00 p.m., and noted that his oxygen saturation level was 52%. After the re-intubation of the infant plaintiff with a tube of a different size, his oxygen saturation level rose. Offor diagnosed the infant plaintiff as suffering from anemia, possibly secondary to blood-group incompatibility, and blood transfusions were administered. At 4:30 a.m. on the next day, Offor placed the infant on high-frequency oscillatory ventilation.
In 2009, the plaintiffs commenced the instant action, inter alia, to recover damages for medical malpractice. After extensive discovery, the defendants separately moved for summary judgment, among other things, dismissing the infant plaintiffs medical malpractice cause of action. In support of their motions for summary judgment, Mercy and Burman submitted expert affidavits concluding that they did not deviate from accepted standards of care. With respect to the issue of proximate cause, Dr. *939 Arnold Goldman stated, in his expert affidavit, that “the complications surrounding the infant-plaintiffs birth ... is a chronic process” that affected him before his mother was admitted to Mercy, and while he was still a fetus. Goldman noted that the infant plaintiff was diagnosed with “Autism and ADHD,” which “may have been caused by congenital/genetic conditions.” Dr. Barry Kramer reached similar conclusions in his affidavit, stating that the infant plaintiffs hemolytic disease affected the infant plaintiff in the fetal state, weeks before his mother was admitted to Mercy. Kramer concluded that, as a consequence of this preexisting condition, the infant plaintiff “would have had the same injuries/complications even if the delivery had occurred earlier.”
Similarly, Offor and Behar submitted expert affidavits opining that they did not deviate from accepted standards of care. Behar’s expert, Dr. Gary Mucciolo, noted that Behar tested the mother for blood antibodies in December 2000, the test was negative, and Behar had no knowledge of the infant plaintiffs blood condition at the time of the delivery. With respect to the issue of proximate cause, Mucciolo noted that a radiology study of the infant plaintiffs head prior to his discharge from Mercy was unremarkable, and a magnetic resonance imaging (hereinafter MRI) scan performed in 2004 showed no evidence of hypoxic brain injury. In Mucciolo’s opinion, the infant plaintiffs pervasive developmental disorder and autism had “no known etiology.”
In opposition, the plaintiffs submitted the affidavit of Dr. Ronald J. Bolognese, who concluded that Mercy and Behar departed from good and accepted medical and obstetrical practice in delaying delivery, administering Cervidil to induce labor — which increased stress on the infant — and failing to obtain a blood profile earlier than they did. Bolognese further noted that Behar also did not retain a sonogram of the infant plaintiff taken on July 30, 2001, showing the circumference of the infant plaintiffs abdomen, which was significant, since a distended abdomen is a symptom of hemolytic disease of the newborn, which was noticeably present when the infant plaintiff was born.
Dr. Gregory Ross concurred with Bolognese, and noted that transfusions were delayed until 12:10 a.m. on the day after delivery, more than two hours after the infant plaintiffs birth, because Mercy and Burman did not earlier complete and communicate the results of a blood screen. In Ross’s opinion, the delay resulted in cerebral hypoxia, and this condition was worsened by Burman’s premature discontinuance of intubation after *940 delivery. Ross also stated that Burman and Offor departed from the accepted standard of care in initially setting the ventilator settings at a rate of 80 breaths per minute, which was an extremely and unusually high rate that, more likely than not, did not allow sufficient time for air to enter the infant plaintiffs lungs, and in failing to provide the infant plaintiff with nitrous oxide for inhalation.
Dr. Freddie Marton, the infant plaintiffs treating physician, stated in his affidavit, “with a reasonable degree of medical certainty,” that the infant plaintiff suffered neurological injury in the hours before his birth, which was aggravated by the “continued cerebral hypoxia and poor oxygen delivery” after birth, resulting in “pervasive developmental disorder, static encephalopathy and psychomotor retardation.” As evidence supporting his opinion, Marton noted that the infant plaintiff suffered seizure-like movements at 11:10 p.m., on August 12, 2001. Although the infant plaintiff was diagnosed with autism, according to Marton, further testing did not support that diagnosis. Marton further noted that a test for a fragile X chromosome associated with genetic mental impairment was negative. Marton explained that, when the infant plaintiff was six months old, he demonstrated a “significant disparity between the fine motor development of the right and left upper extremities,” which indicated “neurological injury to the brain caused by the perinatal cerebral hypoxia.” In Marion’s opinion, the normal findings from the MRI scan performed in 2004, which was performed without contrast, and an electroencelphalogram, which was normal, did not disprove the existence of hypoxic brain injury, because those tests were not sensitive enough.
On a motion for summary judgment dismissing a medical malpractice cause of action, a defendant must make a prima facie showing that there was no departure from good and accepted medical practice, or, if there was a departure, that the plaintiff was not injured thereby (see Salvia v St. Catherine of Sienna Med. Ctr., 84 AD3d 1053 [2011]; Ahmed v New York City Health & Hosps. Corp., 84 AD3d 709, 710 [2011]; Stukas v Streiter, 83 AD3d 18, 24-26 [2011]). Once a defendant has made such a showing, the burden shifts to the plaintiff to “submit evidentiary facts or materials to rebut the prima facie showing by the defendant . . . so as to demonstrate the existence of a triable issue of fact” (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; see Stukas v Streiter, 83 AD3d at 24).
The Supreme Court concluded that Behar and his professional corporation, Marc Behar, M.D., P.C. (hereinafter together the Behar defendants), Burman, and Offor established their *941 entitlement to judgment as a matter of law in connection with the question of whether they departed from accepted standards of medical practice, while Mercy failed to establish its entitlement to judgment as a matter of law with respect to that issue. However, it concluded that all of the defendants established their entitlement to judgment as a matter of law with respect to the issue of proximate cause.
The Supreme Court further concluded that Bolognese’s affidavit raised a triable issue of fact as to whether the Behar defendants departed from accepted standards of medical practice. It disregarded Ross’s affidavit because, although he was board-certified in pediatrics in 2000, he was not board-certified in pediatric critical care until 2004, three years after the alleged malpractice occurred. However, Ross was addressing issues within his specialization (see Behar v Coren, 21 AD3d 1045, 1047 [2005]), there is no evidence that standards of care changed between 2001 and 2004, and there is no authority cited for the proposition that an expert witness must be qualified as an expert, not only when he or she expresses an opinion, but also when the events in issue occurred. Accordingly, Ross’s affidavit raised triable issues of fact as to whether Burman and Of-for deviated from accepted standards of medical practice.
With respect to the issue of proximate cause, some of the defendants’ experts concluded that the infant plaintiff’s developmental disorder may have been caused by his hemolytic disease at birth, and relied on the fact that this disease constitutes a “chronic process” that in all probability affected the infant plaintiff before the alleged medical malpractice occurred. The plaintiffs’ experts, in opposition, stated with reasonable medical certainty that the alleged medical malpractice worsened the infant plaintiff’s condition, causing both cerebral hypoxia and the subsequent symptoms of pervasive developmental disorder. Marton, whose medical records indicated that the infant plaintiff was diagnosed as suffering from autism, cited objective facts in the medical records, indicating that the infant plaintiff suffered a brain injury at birth: seizure-like symptoms were observed soon after birth and, at the age of six months, the infant plaintiff demonstrated a difference of fine motor skills between the left and the right sides of his body. Contrary to the defendants’ contentions, Marion’s opinion was not directly contradicted by his own deposition testimony, and any disparities between that testimony and prior documentary evidence indicating that the infant was suffering from autism were explained (cf. Telfeyan v City of New York, 40 AD3d 372, 373 [2007]). Thus, the Supreme Court erred in determining that *942 Marten’s opinion was inadmissible pursuant to CPLR 3101 (d) (see Jing Xue Jiang v Dollar Rent a Car, Inc., 91 AD3d 603, 604 [2012]; Hughes v Webb, 40 AD3d 1035 [2007]). Accordingly, the plaintiff raised triable issues of fact with respect to the issue of proximate cause.
The defendants’ remaining contentions either are without merit or need not be addressed in light of our determination.
Accordingly, those branches of the defendants’ motions which were for summary judgment dismissing the infant plaintiff’s medical malpractice cause of action should have been denied. Dillon, J.P., Chambers, Austin and Hinds-Radix, JJ., concur.