■ KRISTA BRINKLEY, Appellant, v NASSAU HEALTH CARE CORPORATION et al., Respondents. [993 NYS2d 73]—

In an action to recover damages, inter alia, for medical malpractice, the plaintiff appeals, as limited by her brief, from so much of an order of the Supreme Court, Nassau County (Woodard, J.), entered April 9, 2012, as granted that branch of the motion of the defendants Nassau Health Care Corporation, Nassau University Medical Center, Lambros Angus, Sasha Sotirovic, Tariq Kelker, Yuriy Zhurov, and Maria Spizzirri which was for summary judgment dismissing the medical malpractice cause of action insofar as asserted against Nassau University Medical Center, and that branch of the separate motion of the defendant Good Samaritan Hospital Medical Center which was for summary judgment dismissing the medical malpractice cause of action insofar as asserted against it.

Ordered that the order is affirmed insofar as appealed from, with one bill of costs payable to the respondents appearing separately and filing separate briefs.

On July 23, 2008, the plaintiff underwent bariatric surgery performed by the defendant physician Lambros Angus at the

defendant Nassau University Medical Center (hereinafter NUMC). She was discharged from NUMC on July 28, 2008. At 11:05 a.m. on the following day, she was brought by ambulance to the emergency room at the defendant Good Samaritan Hospital Medical Center (hereinafter Good Samaritan), complaining of abdominal pain. A CT scan was ordered, and the plaintiff was examined by an attending physician at Good Samaritan. Before the results of the CT scan came back, an attending surgeon recommended that the plaintiff be transferred back to Angus at NUMC. Angus was consulted about a suspected gastric leak. Thereafter, the plaintiff was eventually transferred from Good Samaritan to NUMC after spending approximately eight hours at Good Samaritan.

Once the plaintiff was transferred back to NUMC, a CT scan was performed. The results of the test indicated that an anastomotic leak might be present. Angus informed the plaintiff of these findings, and recommended an exploratory laparotomy. The plaintiff did not want to undergo another surgical procedure unless Angus knew definitively that a leak had occurred in her abdomen. The presence of an anastomotic leak was confirmed when the results of scans of the plaintiff's upper gastrointestinal tract, commonly known as upper GI series, were received on July 30 at 2:05 a.m. Based on the results of the upper GI series, surgery to repair the leak was performed approximately six hours later.

The plaintiff commenced this action against NUMC, Nassau Health Care Corporation, Angus, and physicians Sasha Sotirovic, Tariq Kelker, Yuriy Zhurov, and Maria Spizzirri (hereinafter collectively the NUMC defendants), as well as Good Samaritan, to recover damages for, inter alia, medical malpractice. Good Samaritan moved for summary judgment dismissing the complaint insofar as asserted against it, and the NUMC defendants separately moved for summary judgment dismissing the complaint insofar as asserted against them. In an order entered April 9, 2012, the Supreme Court granted both motions in their entirety.

The plaintiff appeals, as limited by her brief, only from so much of the order as awarded summary judgment to NUMC and Good Samaritan dismissing the medical malpractice causes of action insofar as asserted against them.

On a motion for summary judgment dismissing a medical malpractice cause of action, a defendant has the prima facie burden of establishing that there was no departure from good and accepted medical practice, or, if there was a departure, the departure was not the proximate cause of the alleged injuries

(*see Fritz v Burman,* 107 AD3d 936, 940 [2013]; *Makinen v Torelli,* 106 AD3d 782, 783-784 [2013]; *Shehebar v Boro Park Obstetrics & Gynecology, P.C.,* 106 AD3d 715, 715 [2013]). Once the defendant has made such a showing, the burden shifts to the plaintiff to submit evidentiary facts or materials to rebut the prima facie showing made by the defendant, so as to demonstrate the existence of a triable issue of fact (*see Fritz v Burman,* 107 AD3d at 940; *Lingfei Sun v City of New York,* 99 AD3d 673, 675 [2012]; *Bezerman v Bailine,* 95 AD3d 1153, 1154 [2012]). General allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of such a claim, are insufficient to defeat a summary judgment motion (*see Barrett v Hudson Val. Cardiovascular Assoc., P.C.,* 91 AD3d 691, 692 [2012]; *Flanagan v Catskill Regional Med. Ctr.,* 65 AD3d 563, 565 [2009]).

NUMC established its prima facie entitlement to judgment as a matter of law with respect to the medical malpractice cause of action asserted against it by submitting, inter alia, a detailed expert affirmation, based upon the medical records, which demonstrated that NUMC did not depart from good and accepted medical practice in its treatment of the plaintiff, and that, in any event, any alleged departures were not a proximate cause of the plaintiff's injuries (*see Rivers v Birnbaum,* 102 AD3d 26, 43 [2012]; *Lahara v Auteri,* 97 AD3d 799, 799 [2012]). NUMC's expert, Dr. Thomas Magnuson, a board-certified surgeon, explained that leakage can occur spontaneously, is a known risk of the subject procedure of which the plaintiff was fully aware, and occurs in approximately 1% of patients. He opined that the plaintiff was stable when discharged from NUMC on July 28, 2008, at which time there was no evidence of any leakage from the anastomosis, or any other indication of an intra-abdominal complication, and that she exhibited no signs, symptoms, or complications from the surgery. He also opined that the course of treatment and outcome for the plaintiff would not have been different had she remained at NUMC rather than being discharged on July 28, 2008, the day before the leak occurred on the morning of July 29, 2008. Further, he opined that NUMC promptly diagnosed and treated the leak, that performing surgery without first stabilizing the plaintiff and resuscitating her with fluids and antibiotics would have placed her at an unreasonable risk of complications from surgery, including, but not limited to, death, and that the outcome for the plaintiff would not have been different if the surgery had been performed earlier. He thus concluded that the care and treatment rendered by NUMC and the individual physicians employed by NUMC was in accordance with the accepted standard of medical care,

and was not a proximate cause of any of the plaintiff's alleged injuries (*see Barrett v Hudson Val. Cardiovascular Assoc., P.C.,* 91 AD3d at 692).

In opposition to the prima facie showing made by NUMC, the plaintiff failed to raise a triable issue of fact. The affirmation of the plaintiff's expert, Dr. Peter Wilk, was conclusory and speculative, and failed to address specific assertions made by Dr. Magnuson, including those regarding proximate cause (*see Forrest v Tierney,* 91 AD3d 707, 709 [2012]; *Graziano v Cooling,* 79 AD3d 803, 805 [2010]; *Rebozo v Wilen,* 41 AD3d 457 [2007]).

Good Samaritan established its prima facie entitlement to judgment as a matter of law with respect to the medical malpractice cause of action asserted against it by submitting transcripts of the deposition testimony of the medical personnel who treated the plaintiff, and an affirmation from its own expert witness, Dr. Robert H. Leviton, who is board-certified in emergency medicine and family medicine. The evidence submitted by Good Samaritan demonstrated that the care provided by it to the plaintiff was reasonable and within the accepted standard of care, and that its treatment of the plaintiff did not proximately cause the plaintiff any injury (*see Matos v Schwartz,* 104 AD3d 650, 651-652 [2013]; *Lahara v Auteri,* 97 AD3d at 799). Dr. Leviton's conclusions were supported by the evidence demonstrating that the plaintiff was hemodynamically stable when she was transferred, without incident, from Good Samaritan to NUMC.

In opposition to Good Samaritan's showing, the plaintiff failed to raise a triable issue of fact. Dr. Wilk's opinion that the delay in surgical intervention was caused by the treatment she received at Good Samaritan, and that such delay caused complications, thereby injuring the plaintiff, was conclusory, speculative, and without basis in the record (*see Flanagan v Catskill Regional Med. Ctr.,* 65 AD3d 563, 566 [2009]; *Rebozo v Wilen,* 41 AD3d at 459).

Accordingly, the Supreme Court properly granted that branch of the motion of the NUMC defendants which was for summary judgment dismissing the medical malpractice cause of action insofar as asserted against NUMC and that branch of the separate motion of Good Samaritan which was for summary judgment dismissing the medical malpractice cause of action insofar as asserted against it. Balkin, J.P., Austin, Sgroi and Cohen, JJ., concur. 