Messeroux v Maimonides Med. Ctr. (2020 NY Slip Op 01487)





Messeroux v Maimonides Med. Ctr.


2020 NY Slip Op 01487


Decided on March 4, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 4, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
LEONARD B. AUSTIN
ROBERT J. MILLER
COLLEEN D. DUFFY, JJ.


2017-03211
 (Index No. 11515/13)

[*1]Rose Messeroux, etc., et al., appellants,
v
Maimonides Medical Center, et al., respondents.


Marjory Cajoux, Brooklyn, NY, for appellants.
Aaronson Rappaport Feinstein & Deutsch, LLP, New York, NY (Steven C. Mandell of counsel), for respondents.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, etc., the plaintiffs appeal from an order of the Supreme Court, Kings County (Ellen M. Spodek, J.), dated January 31, 2017. The order, insofar as appealed from, granted that branch of the defendants' motion which was for summary judgment dismissing so much of the complaint as alleged medical malpractice.
ORDERED that the order is affirmed insofar as appealed from, with costs.
On October 20, 2009, Joseph Messeroux (hereinafter the decedent), a 51-year-old man who had high blood pressure since he was a teenager, presented to the emergency room's triage unit at the defendant Maimonides Medical Center (hereinafter MMC), complaining of a mild cough with right-sided chest pain, general malaise, and a feverish feeling with chills. Six months before seeking treatment at MMC, the decedent had discontinued taking his hypertension medications. After being admitted to MMC's main emergency room, the decedent was seen by the defendant Amish Aghera, who, after performing various tests and a physical exam, arrived at a differential diagnosis that included chest pain and an abnormal electrocardiogram.
The decedent was then admitted to the MMC telemetry unit, where he was seen by the defendant Malcolm Rose and the defendant Nisarg Changawala, a first-year resident whom Rose was supervising at the time. The decedent underwent further testing and treatment by Rose and Changawala for what was described as a hypertensive crisis, acute congestive heart failure, and hypertensive nephrosclerosis. By October 23, 2009, Rose noted, among other things, that the decedent's hypertensive crisis had resolved. Consequently, Rose ordered that the decedent was ready to be discharged. Upon doing so, Rose gave the decedent various follow-up directions and prescribed him several medications to address his hypertension.
Approximately three hours after his initial discharge from MMC on October 23, 2009, the decedent returned to the MMC emergency room by ambulance. The ambulance call report stated that the decedent had taken the aforementioned medications, after which he immediately felt dizzy and lightheaded. However, by the time he returned to MMC, the decedent's symptoms had dissipated, and he did not have chest pain. During his second presentment to MMC, various tests were performed, and the decedent was seen by the defendant Corey Weiner. After reviewing the test [*2]results and examining the decedent, Weiner determined that the decedent's symptoms were likely an allergic reaction to two of the medications prescribed to address his hypertension. Since the reaction had dissipated and the decedent did not have any current complaints, Weiner ordered that the decedent could be discharged with instructions to stop taking the hypertension medications and to promptly follow up with his primary care physician.
On October 24, 2009, several hours after being discharged from MMC, the decedent was taken by ambulance to Kings County Hospital Center (hereinafter KCH) with complaints of weakness, shortness of breath, a cough, and sweating. Following various tests, and after a KCH physician documented at 7:00 a.m. that the decedent was experiencing a facial droop, tachycardia, and increased shortness of breath, the decedent was diagnosed with a stroke affecting his right side. The decedent remained at KCH until November 1, 2009, when he suffered a heart attack and died.
Thereafter, the plaintiffs commenced this action, inter alia, to recover damages for medical malpractice against MMC, Rose, Changawala, Weiner, and Aghera. The plaintiffs alleged, among other things, that the defendants failed to properly evaluate the decedent in the MMC emergency room initially, while admitted at MMC, and upon his return to the emergency room. The plaintiffs further alleged that this failure amounted to a deviation from accepted medical practice and constituted a proximate cause of the decedent's death. The defendants moved, inter alia, for summary judgment dismissing so much of the complaint as alleged medical malpractice. The Supreme Court, among other things, granted that branch of the defendants' motion. The plaintiffs appeal.
"The requisite elements of proof in a medical malpractice action are a deviation or departure from accepted community standards of practice, and evidence that such deviation or departure was a proximate cause of injury or damage" (Castro v New York City Health & Hosps. Corp., 74 AD3d 1005, 1006; see Hernandez v Nwaishienyi, 148 AD3d 684, 685-686). " A defendant seeking summary judgment in a medical malpractice action bears the initial burden of establishing, prima facie, either that there was no departure from the applicable standard of care, or that any alleged departure did not proximately cause the plaintiff's injuries. In opposition, the plaintiff must demonstrate the existence of a triable issue of fact as to the elements with respect to which the defendant has met its initial burden'" (Boltyansky v New York Community Hosp., 175 AD3d 1478, 1478, quoting Michel v Long Is. Jewish Med. Ctr., 125 AD3d 945, 945-946; see Tsitrin v New York Community Hosp., 154 AD3d 994, 995; Hernandez v Nwaishienyi, 148 AD3d at 686; Stukas v Streiter, 83 AD3d 18, 24). "However, general and conclusory allegations that are unsupported by competent evidence are insufficient to defeat a motion for summary judgment" (Hernandez v Nwaishienyi, 148 AD3d at 686; see Roye v Gelberg, 172 AD3d 1260, 1262).
Here, the defendants established their prima facie entitlement to judgment as a matter of law dismissing so much of the complaint as alleged medical malpractice through, inter alia, expert affirmations of Stuart Dickerman, a physician specializing in internal medicine with a subspecialty in nuclear cardiology and cardiovascular disease, and of Timothy Haydock, a physician specializing in emergency medicine. Both physicians opined, based upon their review of the medical records, that the treatment and medical evaluations, tests, and exams conducted by the defendants were in accordance with the accepted standard of care and that, in any event, any alleged departures were not a proximate cause of the decedent's condition or death (see Roye v Gelberg, 172 AD3d at 1262; Brinkley v Nassau Health Care Corp., 120 AD3d 1287, 1289).
In opposition, the plaintiffs failed to raise a triable issue of fact. The plaintiffs submitted an affirmation of a physician specializing in internal medicine with a subspecialty in cardiovascular disease, but who had no stated familiarity with emergency medicine. The physician's opinion was based, in part, upon an incorrect statement of the facts and assertions contradicted by the medical records, and he failed to address or rebut the opinions of the defendants' two experts. Thus, the affirmation of the plaintiffs' expert was insufficient to raise a triable issue of fact as to whether the defendants deviated from the accepted standard of care, and whether any deviation was a proximate cause of the decedent's death (see Boltyansky v New York Community Hosp., 175 AD3d at 1478; Wagner v Parker, 172 AD3d 954, 955; Tsitrin v New York Community Hosp., 154 AD3d [*3]at 996; Brinkley v Nassau Health Care Corp., 120 AD3d at 1290).
Accordingly, we agree with the Supreme Court's determination to grant that branch of the defendants' motion which was for summary judgment dismissing so much of the complaint as alleged medical malpractice.
RIVERA, J.P., AUSTIN, MILLER and DUFFY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court