Garcia v Dignity Home Care, Inc. (2024 NY Slip Op 51408(U))

[*1]

Garcia v Dignity Home Care, Inc.

2024 NY Slip Op 51408(U)

Decided on October 15, 2024

Supreme Court, Suffolk County

Hensley, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 15, 2024
Supreme Court, Suffolk County

Michael J. Garcia AS EXECUTOR OF THE ESTATE OF ANN GARCIA, Plaintiff,

against
Dignity Home Care, Inc., SUNRISE SENIOR LIVING MANAGEMENT INC., GWC-DIX HILLS, INC., BRIJESH KUMAR GOYAL MD, GULATI & GOYAL, M.D., LLP, Defendants.

Index No. 609484/2020

ATTORNEY FOR PLAINTIFF:
Dalli & Marino LLP
Salvatore L. Marino, Esq.
231 Mineola Blvd.
Mineola, NY 11501
ATTORNEY FOR DEFENDANTS:
White & Williams LLP
Monica N. Doss, Esq.
7 Times Square, Suite 2900
New York, NY 10036
Benvenuto & Gaujean
Thomas J. Benvenuto, Esq.
1800 Northern Blvd.
Roslyn Heights, NY 11576

Paul M. Hensley, J.

Upon the following papers read on defendants Dignity Home Care, Inc., Sunrise Senior Living Management, Inc., and GWC-Dix Hills, Inc. motion (sequence #002) and defendants Brijesh Kumar Goyal, M.D. and Gulati &Goyal, M.D., LLP's motion (sequence #003) to dismiss plaintiff's complaint: NYSCEF documents 1 thru 198; it is hereby
ORDEREDdefendants Dignity Home Care, Inc., Sunrise Senior Living Management, Inc., and GWC-Dix Hills, Inc. motion (sequence #002) is denied; and it is
ORDEREDdefendants Brijesh Kumar Goyal, M.D. and Gulati &Goyal, M.D., LLP's motion (sequence #003) is denied.
Plaintiff, Michael J. Garcia, commenced this action on July 28, 2020, to recover damages for his mother's estate. Plaintiff's complaint alleges four causes of action: medical malpractice, negligence and negligence per se, breach of contract, and wrongful death. With regard to the first cause of action alleging medical malpractice, plaintiff alleges that Dr. Brijesh Kumar Goyal departed from standards of good and accepted medical practice in the medical care he rendered to Ann Garcia from October 2019 until her death on December 4, 2019. Specifically, plaintiff maintains that Dr. Goyal failed to prepare an adequate care plan, failed to perform assessments, failed to properly manage, monitor, and prescribe medication, failed to properly diagnose, evaluate and treat Ann Garcia's medical condition, failed to recognize her propensity to fall, failed to take proper cognizance of her history of falls, diminished mental capacity and diminished physical strength, and failed to prevent her from falling and suffering a blunt impact to her neck causing her death. Plaintiff's second cause of action alleges against Dignity Home Care, Inc., Sunrise Senior Living Management, Inc., and GWC-Dix Hills, Inc. (hereinafter "Sunrise" collectively), negligence in nursing for the same time period. Specifically, that Sunrise failed to provide proper hydration and nutrition to Ann Garcia, failed to notify hospital and medical personnel of changes in her condition, failed to prepare adequate care plans, failed to have adequate staffing levels of nurses and other personnel, and failed to properly supervise and prevent her from falling. Significantly, plaintiff alleges that Sunrise provided Ann Garcia with a dangerous bed that increased the likelihood that she would fall. It is also alleged that Sunrise violated various statutes including 46-B of the New York Public Health Law. Plaintiff's third cause of action alleges that all defendants were negligent and breached a duty of care set forth by agreement, statute, and common law. The fourth cause of action alleges that all defendants by virtue of wrongful death deprived Ann Garcia's children of support, services, comfort, and society of her presence. Dr. Goyal answered on September 9, 2020. Sunrise answered on September 23, 2024. Discovery is complete and a note of issue was filed on March 22, 2024. The Sunrise defendants now move for summary judgment. In support of the motion, Sunrise submits, among other things, the pleadings, an affirmation of counsel, a memorandum of law, Ann Garcia's medical records, deposition transcripts of plaintiff and Brianna Collado, the written statements of Jacelyn Jean-Pierre and Karen Hernandez and the expert affirmation of Margo Kunze, RN. Dr. Goyal and Gulati & Goyal, M.D., LLP, also move for summary judgment. In support of the motion, they submit, among other things, an affirmation of counsel, the pleadings, Ann Garcia's medical records, the deposition transcripts of plaintiff, Kerry Zimmerly, Karen Hernandez, Brianna Collado, Kristi Wor, Denise Rinaldi, Georgette Raphael, Michael DePeola, and Dr. Goyal's own deposition transcript, the autopsy report, and the expert affirmation of Dr. Lawrence Diamond. In opposition to both motions, plaintiff submits, among other things, an affirmation of counsel, a memorandum of law, the expert affidavit of Dr. Karim J. Khimani, photographs of the Joerns bed, the December 4, 2019, fall note, deposition transcripts of Police Officer Alfredo Alvarado, Dr. Odette Hall, Denise Rinaldi, Brian Collado, Georgette Raphael, Kristi Wor, and Dr. Goyal.
On October 14, 2019, 80-year-old Ann Garcia was admitted to Sunrise Senior Living at Dix Hills. She had a prior medical history of Parkinson's disease, anxiety disorder, bilateral [*2]hearing loss, hypertension, obesity, bilateral glaucoma, allergic rhinitis, gastroesophageal reflux, and hyperlipidemia. On October 8, 2019, she underwent a pre-admission evaluation performed by Dr. Eric Blacher. Dr. Blacher reported that Ann Garcia could not stand up by herself, was wheelchair bound, wears hearing aids, and glasses. She required assistance ambulating and transferring and needed assistance with feeding. Dr. Blacher opined that Ann Garcia was an appropriate resident for Sunrise Senior Living. Kerry Zimmerly, Sunrise's assisted living coordinator testified that she conducted an evaluation to assess Ann Garcia's functionality and abilities. Based upon that evaluation Ann Garcia was accepted for admission.
An individualized care plan was developed for Ann Garcia which indicated that she was at risk of falls, especially out of bed. She was to have frequent room checks, and three call bells, one where she slept, and two in the bathroom. She also wore a personal help button pendant around her neck. The individual care plan mandated the physical assist of one person, a wheelchair, and two persons assist for transfers.
On October 14, 2019, Ann Garcia moved in. She was assessed as level 1 as to incontinence. Sadly, her husband, Jack, had passed away two weeks before on October 1, 2019. Entry notes indicated she could not walk, used a wheelchair, and could not propel her own wheelchair. She needed assistance with dressing, grooming, toileting, showering, and bathing. It was again noted she was a fall risk.
On October 15, 2019, Kerry Zimmerly noted Ann Garcia struggled with the pull the call cord, so a pendant was purchased and set up. That evening she frequently used the pull cord. 
On October 17, 2019, Dr. Goyal, the assigned attending physician at Sunrise, examined Ann Garcia and prepared an admission note. Dr. Goyal testified after his initial assessment he followed up with his patients every six to eight weeks, or sooner if need be. Dr. Goyal testified he relied upon Sunrise Nursing staff to advise him of patient's complaints or needs for "special visits." Later in October 2019, Dr. Goyal had a special visit with Ann Garcia whose chief complaint was an unsteady gait. Dr. Goyal recommended physical therapy for ambulation, balance and gait training. The unsteady gait was due to Parkinson's disease and ataxia.
On November 5, 2019, during a Sunrise interdisciplinary meeting, a Joerns bed was recommended for Ann Garcia to help her with positioning in the bed and transferring in and out of bed. The bed was explained to plaintiff and ordered by Dr. Goyal. 
On November 7, 2019, a monthly wellness visit note indicated that Ann Garcia was alert and oriented, with no distress and no complaints.
On November 11, 2019, Dr. Goyal saw Ann Garcia for a chief complaint of constipation. Her laboratory reports were within normal limits.
On November 12, 2019, a monthly wellness visit examination was completed and Colace was started. 
On November 15, 2019, the Joerns bed was provided, and Ann Garcia was instructed on how to operate the remote control for the bed. 
On November 18, 2019, Dr. Goyal saw Ann Garcia for a special visit with a chief complaint of nasal congestion with discharge. Dr. Goyal's impression was allergic rhinitis and he prescribed Xyzal and Nasonex. 
On November 24, 2019, nursing notes indicate that Ann Garcia had not had a bowel movement documented in the last three days. Polyethylene glycol (a laxative) was ordered and administered. 
On December 4, 2019, Ann Garcia was found on the floor of her room lying prone, [*3]perpendicular to the bed. Records indicate she did not have any prior incidents of falls at Sunrise. At 5:45 a.m., a fall note was prepared. The bed was noted to be in the high position, and Ann Garcia did not have respirations or a pulse. 
On December 5, 2019, an autopsy report indicated the cause of death was blunt force trauma of the neck due to the fall, despite plaintiff being advised his mother had a heart attack.
The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law by tendering evidence in admissible form sufficient to eliminate any material issues of fact from the case (see Alvarez v Prospect Hosp., 68 NY2d 320, 508 NYS2d 923 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 487 NYS2d 316 [1985]). The movant has the initial burden of proving entitlement to summary judgment (see Winegrad v New York Univ. Med. Ctr., supra). Failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see id.). Once such proof has been offered, the burden then shifts to the opposing party who must proffer evidence in admissible form and must show facts sufficient to require a trial of any issue of fact to defeat the motion for summary judgment (see CPLR 3212 [b]; Alvarez v Prospect Hosp., supra; Zuckerman v City of New York, 49 NY2d 557, 427 NYS2d 595 [1980]). As the court's function on such a motion is to determine whether issues of fact exist, not to resolve issues of fact or to determine matters of credibility, evidence must be viewed in the light most favorable to the nonmoving party (see Moonilal v Roman Catholic Church of St. Mary Gate of Heaven, 225 AD3d 592, 206 NYS3d 686 [2d Dept 2024]; Morejon v New York City Tr. Auth., 216 AD3d 134, 191 NYS3d 427 [2d Dept 2023]).
Healthcare professionals must exercise due care in caring for patients (see e.g. Nestorowich v Ricotta, 97 NY2d 393, 740 NYS2d 668 [2002]). "The requisite elements of proof in a medical malpractice action are a deviation or departure from accepted community standards of medical practice, and evidence that such deviation or departure was a proximate cause of injury or damage" (E.K. v Tovar, 185 AD3d 803, 127 NYS3d 580 [2d Dept 2020]; see Messeroux v Maimonides Med. Ctr., 181 AD3d 583, 121 NYS3d 136 [2d Dept 2020]). To meet its prima facie burden on summary judgment, a defendant in a medical malpractice action must show either that it "did not depart from the accepted standard of care or that any departure was not a proximate cause of the plaintiff's injuries" (Joyner v Middletown Med., P.C., 183 AD3d 593, 594, 123 NYS3d 169, 171 [2d Dept 2020]; see Castillo v Surasi, 181 AD3d 786, 121 NYS3d 291 [2d Dept 2020]). In opposition, a plaintiff must "raise a triable issue of fact regarding the element or elements on which the defendant has made its prima facie showing" (Aliosha v Ostad, 153 AD3d 591, 61 NYS3d 55 [2d Dept 2017]; see Stukas v Streiter, 83 AD3d 18, 918 NYS2d 176 [2d Dept 2011]). 
With regard to wrongful death to succeed on an action to recover damages for wrongful death, the plaintiff must prove the following elements: (1) the death of a human being born alive; (2) a wrongful act, neglect or default of the defendant by which the decedent's death was caused, provided the defendant would have been liable to the decedent had death not ensued; (3) the survival of distributes who suffered pecuniary loss by reason of the death of decedent; and (4) the appointment of a personal representative of the decedent (Chong v New York City Transit Authority, 83 AD2d 546, 441 NYS2d 24 [2d Dept 1981]).
Defendant Sunrise's expert, Marge Kunze, RN, an expert in the field of assisted living facilities and post-acute care facilities, opines that Ann Garcia's treatment at Sunrise, "met or exceeded applicable standards of care." Kunze also opines that Sunrise did not breach any state [*4]regulations as found in the New York Public Health Law. Sunrise also maintains that no breach of contract occurred, and Sunrise did not commit a wrongful act or neglect that resulted in Ann Garcia's death. Based upon the affirmation of Marge Kunze, and the record presented by Sunrise, the Sunrise defendants have established their prima facie entitlement to dismissal of plaintiff's complaint.
Likewise, defendant Dr. Goyal has established his prima facie entitlement to summary judgment based upon the expert affirmation of Dr. Lawrence Diamond. Dr. Diamond, a board-certified expert in family practice and geriatric medicine opines that there were no departures from good and accepted medical practice that proximately caused any injury to Ann Garcia. He opines that Dr. Goyal did not depart from good and accepted medical practice in the treatment of Ann Garcia. He further opines that none of the care and treatment rendered by Dr. Goyal proximately caused Ann Garcia's injuries. He also opines that the implementation of fall precaution measures was a nursing function, and Dr. Goyal was entitled to rely on Sunrise to implement a fall risk plan or safety procedures. Dr. Diamond opines that the use of physical restraints or bed rails are not considered the standard of care for fall prevention in an assisted living setting. Significantly, Dr. Diamond opines that the maintenance and operation of the Joerns bed is not the responsibility of the attending physician. 
In opposition to both motions, plaintiff has raised triable issues of fact through the affidavit of Dr. Karim J. Khimani, a board-certified expert in internal medicine, with a sub-certification in geriatrics. Dr. Khimani opines that from Ann Garcia's initial evaluation, "significant information in the evaluation unequivocally shows that a self-operated Joerns type bed was completely inappropriate for Ms. Garcia," as she was at risk for falling mostly out of bed. She also reported that she would wake up at least twice during the night to use the bathroom. Prior to her admission she had fallen within the last 30 days and injured her left hip. In June of 2019 she fell and suffered bruising and lacerations to her face. Dr. Khimani opines that it was grossly negligent for defendants to provide the bed to Ms. Garcia given her documented limitations and disabilities. Dr. Khimani also notes that plaintiff Michael Garcia was advised by defendant Sunrise that the bed had railings. Michael Garcia further testified he was advised on December 4, 2019, that his mother had a heart attack and had passed away. He was told that his mother was found on the floor, the police were called, and the police helped put her back in bed. 
Dr. Khimani also takes extensive issue with Margo Kunze opinions. He opines that Sunrise breached their agreement with decedent by failing to perform 24-hour 30-minute checks, were negligent in providing the Joerns bed, and failing to implement an adequate care plan. He maintains that the facility was understaffed and that various regulations were violated. He further opines that Sunrise attempted to "cover up" the circumstances of Ann Garcia's death.
As to Dr. Goyal, Dr. Khimani opines that Dr. Goyal departed from standards of accepted medical practice in his care and treatment of Ann Garcia. Specifically, he opines that Dr. Goyal should never have prescribed the Joerns type bed to Ann Garcia, as it was more likely that she could fall out of it. He notes Dr. Goyal testified that he had no knowledge as to whether Ms. Garcia could safely operate a Joerns bed. He further opines within a reasonable degree of medical certainty that Dr. Goyal departed from good and accepted medical practice failing to recommend that a suitable fall precaution measures be implemented for her safety. Dr. Khimani also takes extensive issue with each of Dr. Diamond's opinions. Each of these issues are best resolved by a trier of fact and summary judgment is not appropriate here.
E N T E R :
Paul M. Hensley
Hon. Paul M. Hensley
Acting Justice of the Supreme Court
Date: October 15, 2024
Riverhead, New York