■ NOAH GRESSMAN, an Infant, by His Mother and Natural Guardian, NOVA TORRES, Appellant, v GAIL ALLISON STEPHEN-JOHNSON et al., Respondents. [998 NYS2d 104]—

In an action to recover damages for medical malpractice, the plaintiff appeals from (1) a judgment of the Supreme Court, Kings County (Steinhardt, J.), dated February 8, 2013, which, upon an order of the same court dated November 29, 2012, granting the defendants' motion for summary judgment dismissing the complaint, is in favor of the defendants and against him dismissing the complaint, and (2), as limited by his brief, from so much of an order of the same court dated April 11, 2013, as, upon reargument, adhered to the original determination.

Ordered that the judgment is reversed, on the law, the defendants' motion for summary judgment is denied, the complaint is reinstated, and the order dated November 29, 2012, is modified accordingly; and it is further,

Ordered that the appeal from the order dated April 11, 2013, is dismissed as academic in light of our determination on the appeal from the judgment, and the order dated April 11, 2013, is vacated; and it is further,

Ordered that one bill of costs is awarded to the plaintiff.

Noah Gressman (hereinafter the plaintiff) was born on February 3, 2005, and was diagnosed several years later with, among other things, pervasive developmental disorder. The plaintiff's mother, Nova Torres (hereinafter the mother), commenced this action on his behalf against Gail Allison Stephen-Johnson, the physician who delivered him, and Central Brooklyn Medical Group, P.C., where the mother received prenatal care from Stephen-Johnson, alleging medical malpractice. The mother alleged, among other things, that the plaintiff's injuries were proximately caused by Stephen-Johnson's failure to diagnose fetal hypoxia, failure to properly administer pitocin, and failure to deliver the plaintiff by Cesarean section.

The defendants moved for summary judgment dismissing the complaint. By order dated November 29, 2012, the Supreme Court granted the motion. A judgment dated February 8, 2013, was entered upon the order, dismissing the complaint. Thereafter, the plaintiff moved for leave to reargue and renew. By order dated April 11, 2013, the Supreme Court granted reargument but, upon reargument, adhered to its original determination.

A defendant physician moving for summary judgment in an action alleging medical malpractice "must make a prima facie showing that there was no departure from good and accepted medical practice or that the plaintiff was not injured thereby" (*Stukas v Streiter*, 83 AD3d 18, 24 [2011]; *see Poter v Adams*, 104 AD3d 925, 926 [2013]; *Gillespie v New York Hosp. Queens*,

96 AD3d 901, 902 [2012]; *Williams v Bayley Seton Hosp.*, 112 AD3d 917, 918 [2013]). Once a defendant has made such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, but only as to the elements on which the defendant met the prima facie burden (*see Shehebar v Boro Park Obstetrics & Gynecology, P.C.*, 106 AD3d 715, 715-716 [2013]; *Gillespie v New York Hosp. Queens*, 96 AD3d at 902; *Stukas v Streiter*, 83 AD3d at 23-25).

Here, the defendants demonstrated their prima facie entitlement to judgment as a matter of law by showing that they did not depart from good and accepted medical practice in their treatment, and therefore that their treatment was not a proximate cause of the plaintiff's injuries (*see McKenzie v Clarke*, 77 AD3d 637, 638 [2010]; *Sheenan-Conrades v Winifred Masterson Burke Rehabilitation Hosp.*, 51 AD3d 769, 769 [2008]). However, in opposition, the plaintiff's expert affidavits raised triable issues of fact as to whether the plaintiff's persistent tachycardia was an indicator of hypoxia, and if so, whether the failure to deliver the plaintiff by Cesarean section and to administer pitocin constituted departures from accepted medical practice which caused hypoxic/ischemic brain injury. Although the defendants' expert, Ariel Fleischer, stated that the plaintiff's arterial blood gas levels taken at stated intervals in the hours after his birth, while he was under treatment in the intensive care unit, contraindicated fetal hypoxia, the plaintiff's expert, Bruce L. Halbridge, concluded that his paleness at birth and shortly thereafter, and the acid levels of his blood, were signs of fetal hypoxia. Further, the plaintiff submitted another expert's affidavit stating that the plaintiff's specific symptoms were "consistent with brain damage from hypoxia/ischemia." Contrary to the defendants' contention, the affidavits of the plaintiff's experts were not conclusory or speculative, but were based upon specific facts in the record (*see Fritz v Burman*, 107 AD3d 936 [2013]; *Makinen v Torelli*, 106 AD3d 782, 784 [2013]; *cf. Graziano v Cooling*, 79 AD3d 803, 805 [2010]; *Rebozo v Wilen*, 41 AD3d 457 [2007]). The conflicting medical opinions present triable issues of fact (*see Darwick v Paternoster*, 56 AD3d 714 [2008]).

The defendants' remaining contentions are without merit. Balkin, J.P., Leventhal, Hinds-Radix and LaSalle, JJ., concur.