SOPHIA KAOUS, an Infant, by Her Mother and Natural Guardian, AICHA AGOUZOUL, et al., Appellants, v LUTHERAN MEDICAL CENTER et al., Respondents. [30 NYS3d 663]—

In a consolidated action to recover damages for medical malpractice, the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Kings County (Bunyan, J.), dated February 14, 2014, as (a) granted the motion of the defendants Lutheran Medical Center and Seong Pan Si, also known as Seong Pan Physician, P.C., and the separate motion of the defendant Hassan Webeh, doing business as New Beginnings Perinatal Center, to compel the production of authorizations for medical records pertaining to the births of the infant plaintiff's siblings, and the pregnancies that resulted in those births, and to permit the defendants to perform genetic testing and a physical examination of the infant plaintiff, and (b) denied the plaintiffs' cross motion for, inter alia, summary judgment on the issue of liability.

Ordered that the order is affirmed insofar as appealed from, with one bill of costs payable to the defendants appearing separately and filing separate briefs.

In July 2008, the plaintiff Aicha Agouzoul gave birth to the infant plaintiff, Sophia Kaous (hereinafter Sophia), at the defendant Lutheran Medical Center (hereinafter LMC). During her pregnancy, Agouzoul treated with the defendant Seong Pan Si, also known as Seong Pan Physician, P.C. (hereinafter Seong), and underwent prenatal testing with the defendant Hassan Webeh of the defendant New Beginnings Perinatal Center (hereinafter New Beginnings). Webeh reported as normal the results of two ultrasound examinations conducted when Agouzoul was 16 weeks and 20 weeks pregnant. However, when Sophia was born, she exhibited multiple congenital abnormalities and was unable to breathe. After several unsuccessful intubation attempts were made immediately after her birth, a tracheostomy was performed, enabling Sophia to breathe. Although Sophia was ultimately stabilized, she suffered irreparable brain damage.

The plaintiffs commenced this action against LMC and Seong (hereinafter together the LMC defendants), as well as Webeh and New Beginnings (hereinafter together the New Beginnings defendants), to recover damages for the defendants' alleged malpractice. The complaint alleged that various departures from accepted standards of care by the defendants caused Sophia's brain injury. Specifically, the plaintiffs alleged that Webeh negligently failed to prenatally diagnose the congenital abnormalities, which prevented Seong from preparing for Sophia's respiratory needs at birth. In addition, the plaintiffs alleged that Seong failed to identify the need to deliver Sophia via cesarean section and that LMC's physicians negligently performed an intubation of Sophia and delayed the performance of a tracheostomy.

After the depositions of Agouzoul and her husband, the LMC defendants served two discovery demands. The first was for authorizations for medical records pertaining to the births of Agouzoul's younger children, one of whom was stillborn, and the pregnancies that resulted in those births. The second demand requested that Sophia submit to a physical examination and a genetic blood test to confirm her diagnosis of Fraser Syndrome and preclude the possibility of other genetic disorders. The plaintiffs rejected these demands. The LMC defendants subsequently moved to compel the production of the demanded discovery, attaching an affirmation of a genetic expert, who opined that it was necessary to perform a basic

blood test of Sophia and to review her siblings' medical records in order to confirm Sophia's diagnosis and determine whether her injuries were caused by any other genetic predispositions. The New Beginnings defendants moved for the same relief.

The plaintiffs opposed the defendants' motions and cross-moved for, inter alia, summary judgment on the issue of liability, submitting, inter alia, an expert affirmation in support of the plaintiffs' claims. In opposition, the defendants submitted expert affirmations on behalf of each defendant, wherein the experts opined that there was no deviation from accepted standards of care. The Supreme Court denied the plaintiffs' cross motion for summary judgment on the issue of liability, finding that they failed to make a prima facie showing of medical malpractice, and granted the defendants' motions to compel the production of the demanded discovery.

To prevail on a motion for summary judgment in a medical malpractice action, a plaintiff must make a prima facie showing that " 'the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries' " (*Barrocales v New York Methodist Hosp.*, 122 AD3d 648, 649 [2014], quoting *Stukas v Streiter*, 83 AD3d 18, 23 [2011]). Once the plaintiff has made such a showing, the burden shifts to the defendant to demonstrate the existence of a triable issue of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Generally, "[s]ummary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions," as such cases present credibility questions which can only be resolved by a jury (*Fink v DeAngelis*, 117 AD3d 894, 896 [2014] [internal quotation marks omitted]; *see Gressman v Stephen-Johnson*, 122 AD3d 904, 906 [2014]).

Here, the Supreme Court properly concluded that the plaintiffs failed to meet their initial burden. The plaintiffs' expert failed to specify the acceptable standards of medical care applicable to each defendant at the time of the claimed malpractice and to explain their alleged deviations or departures therefrom (*see Barrocales v New York Methodist Hosp.*, 122 AD3d at 649; *Bollino v Hitzig*, 34 AD3d 711, 711 [2006]). The plaintiffs' expert also failed to establish that his opinions were based on facts in the record (*see DiGeronimo v Fuchs*, 101 AD3d 933, 936 [2012]). Further, the expert did not fully explain how the defendants' respective acts of medical malpractice proximately caused Sophia's injuries (*see Ramsay v Good Samaritan Hosp.*, 24 AD3d 645, 647 [2005]). As a result of the insufficiencies in their expert's opinion, the plaintiffs failed to

make a prima facie showing that the defendants committed medical malpractice (*see Bollino v Hitzig*, 34 AD3d at 711). Thus, the plaintiffs' cross motion was properly denied without regard to the sufficiency of the opposing papers (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

Turning to the defendants' motions to compel the production of the demanded discovery, the Supreme Court properly determined that the defendants were entitled to perform genetic testing and a physical examination of Sophia. In a medical malpractice action, where the physical condition of a party is in controversy, "any party may serve notice on another party to submit to a physical, mental or blood examination by a designated physician" (CPLR 3121 [a]). Here, the defendants challenge the plaintiffs' allegation that Sophia's injuries were caused by the defendants' purported malpractice and not Fraser Syndrome or any other genetic predisposition. Given that Sophia's physical and mental condition is in dispute, the Supreme Court properly granted those branches of the defendants' motions which were to permit genetic testing and a physical examination of Sophia (*see LaBossiere v Hudson*, 187 AD2d 411, 411 [1992]).

In addition, the Supreme Court properly granted those branches of the defendants' motions which were for authorizations for the medical records of Sophia's siblings. CPLR 3101 (a) provides for "full disclosure of all matter material and necessary in the prosecution or defense of an action." The terms "material" and "necessary" are liberally construed to further the disclosure "of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity" (*Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406 [1968]; *see Reid v Soults*, 114 AD3d 921, 922 [2014]). Here, the defendants demonstrated that the siblings' medical records are material and necessary by submitting an expert affirmation explaining that these records would ensure that Sophia is properly diagnosed and that the claimed injuries were not caused by any other genetic conditions to which she was predisposed (*see Farkas v Orange Regional Med. Ctr.*, 97 AD3d 720, 721 [2012]). Accordingly, the court properly determined that the plaintiffs were required to provide the defendants with authorizations for the release of the medical records of Sophia's siblings and the pregnancies that resulted in their births, and to produce Sophia for genetic testing and a physical examination. Dillon, J.P., Leventhal, Chambers and Barros, JJ., concur.