Templeton v Papathomas (2022 NY Slip Op 05228)

Templeton v Papathomas

2022 NY Slip Op 05228

Decided on September 21, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 21, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
SHERI S. ROMAN
JOSEPH J. MALTESE
DEBORAH A. DOWLING, JJ.

2020-05295
 (Index No. 5662/16)

[*1]Donna Templeton, etc., respondent, 
v
Erica Papathomas, et al., appellants.

Martin Clearwater & Bell LLP, East Meadow, NY (Gregory A. Cascino, John J. Barbera, and Karen B. Corbett of counsel), for appellants.
Brian M. Limmer, Mineola, NY, for respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for podiatric malpractice and wrongful death, the defendants appeal from an order of the Supreme Court, Nassau County (Sharon M.J. Gianelli, J.), dated May 13, 2020. The order denied the defendants' motion for summary judgment dismissing the complaint.
ORDERED that the order is reversed, on the law, with costs, and the defendants' motion for summary judgment dismissing the complaint is granted.
On January 14, 2015, at the age of 81, the plaintiff's decedent, who suffered from several underlying comorbidities, including diabetes, peripheral vascular disease, and cardiovascular disease, presented to the defendant Cherrywood Foot Care Group, P.C. (hereinafter Cherrywood), where he was seen by the defendant Erica Papathomas, a podiatrist, for a self-inflicted burn to the top of his right foot. Papathomas's physical examination of the foot revealed "intact serous blisters and areas of raw skin," but "no signs of infection/cellulitis." Papathomas diagnosed the wound as a second-degree burn, treated the wound by applying Silvadene cream and a dry sterile dressing, and instructed the decedent and the plaintiff on home wound care. Additionally, although Papathomas did not observe any signs of infection, based upon the decedent's diabetes, she prophylactically prescribed Augmentin, an antibiotic.
On January 20, 2015, the decedent returned for a follow-up visit. Papathomas performed a physical examination of the foot and noted no changes, including "no signs of infection/cellulitis." Papathomas changed the dressing, reapplied Silvadene cream, continued Augmentin as a prophylactic measure, and instructed the decedent to return for a second follow-up visit in one week.
On January 31, 2015, the decedent returned for his second follow-up visit. Papathomas examined the foot and did not observe any change in the condition of the wound. She again noted no signs of infection. Since the wound had not improved, Papathomas referred the decedent to the wound clinic at St. Joseph's Hospital (hereinafter St. Joseph's). It is undisputed that the wound was not infected at any point during the time the decedent was treating with Papathomas.
On February 6, 2015, the decedent presented to St. Joseph's, at which time he was diagnosed with a chronic ulcer, which initially was treated with the application of Silvadene cream and dry sterile dressings—identical to the treatment provided by Papathomas. It was not until March 6, 2015, at his fourth weekly follow-up visit at St. Joseph's, that the decedent was diagnosed with a wound infection. On March 13, 2015, the decedent's peripheral pulses were described as "abnormal absent" and, on March 17, 2015, the decedent was admitted to Plainview Hospital, at which time it was determined that a transmetatarsal amputation of his right foot may be necessary. The amputation was performed on March 24, 2015. On June 11, 2015, the decedent was admitted to Plainview Hospital with a chief complaint of altered mental status and water retention. While admitted, the decedent lost consciousness and went into cardiac arrest, and on June 24, 2015, the decedent died.
In August 2016, the plaintiff, as administrator of the decedent's estate, commenced this action against Papathomas and Cherrywood, inter alia, to recover damages for podiatric malpractice and wrongful death. Following discovery, the defendants moved for summary judgment dismissing the complaint. In an order dated May 13, 2020, the Supreme Court denied the defendants' motion. The defendants appeal.
The requisite elements of proof in a podiatric malpractice action are a deviation or departure from accepted community standards of practice and evidence that such departure was a proximate cause of injury or damage (see Palmeiro v Luchs, 202 AD3d 989, 990; Paone v Lattarulo, 123 AD3d 683, 683). Thus, on a motion for summary judgment, a defendant doctor must make a prima facie showing that there was no departure from good and accepted medical practice or that his or her acts were not a proximate cause of any injury to the plaintiff (see Ortiz v Wyckoff Hgts. Med. Ctr., 149 AD3d 1093, 1094; Stukas v Streiter, 83 AD3d 18, 24). "It is the plaintiff's burden to raise a triable issue of fact regarding the element or elements on which the defendant has made its prima facie showing" (Jacob v Franklin Hosp. Med. Ctr., 188 AD3d 838, 839-840 [internal quotation marks omitted], affd 36 NY3d 838, 839-840; see Stukas v Streiter, 83 AD3d at 24). "Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions. Such credibility issues can only be resolved by a jury" (Feinberg v Feit, 23 AD3d 517, 519 [citations omitted]; see Palmeiro v Luchs, 202 AD3d at 991). "General and conclusory allegations of medical malpractice, however, unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat a defendant physician's summary judgment motion" (Myers v Ferrara, 56 AD3d 78, 84; see Lamalfa v New York Methodist Hosp., 202 AD3d 665, 666). "In order not to be considered speculative or conclusory, expert opinions in opposition should address specific assertions made by the movant's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record" (Lamalfa v New York Methodist Hosp., 202 AD3d at 666 [internal quotation marks omitted]; see Tsitrin v New York Community Hosp., 154 AD3d 994, 996). "An expert opinion that is contradicted by the record cannot defeat summary judgment" (Lamalfa v New York Methodist Hosp., 202 AD3d at 666 [internal quotation marks omitted]; see Schwartz v Partridge, 179 AD3d 963, 964).
Here, it is undisputed that the defendants established their prima facie entitlement to judgment as a matter of law dismissing the complaint by submitting, inter alia, the affirmation of a board-certified podiatrist, who opined within a reasonable degree of podiatric certainty that the care Papathomas rendered to the decedent was in accordance with good and accepted practice, and did not proximately cause or contribute to any injuries (see Lamalfa v New York Methodist Hosp., 202 AD3d at 666; Capobianco v Marchese, 125 AD3d 914, 916).
In opposition, the plaintiff relied upon the opinion of her expert that Papathomas departed from good and accepted podiatric practice by failing to immediately refer the decedent to an emergency room/specialist/wound care center, based upon the severity of the burn and the decedent's comorbidities. The expert relied upon certain photographs of the decedent's foot, which were taken by the decedent's daughter on January 18, 2015, and which allegedly showed signs that the wound was a third-degree burn, and not a second-degree burn as diagnosed by Papathomas on January 14, 2015. According to the plaintiff's expert, the failure to undertake "aggressive procedures," including debridement of necrotic tissue as seen in the photographs, "predisposed" the [*2]decedent to a wound infection, which ultimately led to the partial amputation of his right foot, the stress of which caused the decedent to suffer a heart attack and die.
However, since the opinion of the plaintiff's expert is entirely speculative and unsupported by the decedent's medical records, the expert's affidavit was insufficient to raise a triable issue of fact. Specifically, the decedent's medical records establish that on January 31, 2015, after Papathomas observed that the decedent's wound had not improved, Papathomas referred the decedent to a wound care clinic. On February 6, 2015, the decedent presented to St. Joseph's, where, on that day and again at his first follow-up visit on February 13, 2015, the decedent received the same course of treatment prescribed by Papathomas. Moreover, the decedent's medical records from his admissions to Plainview Hospital in March 2015 and June 2015 contain no causal connection between the amputation of the decedent's foot and his subsequent death, and the care the decedent received from Papathomas. Thus, the decedent's medical records undermine the opinion of the plaintiff's expert that an earlier referral to an emergency room/specialist/wound care center for more aggressive treatment would have resulted in a better overall outcome for the decedent (see generally Capobianco v Marchese, 125 AD3d at 916).
Despite accepting the inescapable fact that St. Joseph's initially continued the same course of treatment prescribed by Papathomas when the decedent first presented to St. Joseph's in February 2015, our dissenting colleague nevertheless concludes that the opinion of the plaintiff's expert was sufficient to raise a triable issue of fact "under the particular circumstances of this case." However, the affidavit of the plaintiff's expert, which was "conclusory and unsupported by the record" (Lamalfa v New York Methodist Hosp., 202 AD3d at 666), does not elaborate on any "particular circumstances" that would heighten the standard of care applicable to the defendants in this case.
Accordingly, the Supreme Court should have granted the defendants' motion for summary dismissing the complaint.
DILLON, J.P., ROMAN and MALTESE, JJ., concur.
DOWLING, J., dissents, and votes to affirm the order, with the following memorandum:
In my view, the affidavit of the plaintiff's expert, Jay Kerner, was sufficient to raise a triable issue of fact as to whether the defendant Erica Papathomas departed from good and accepted podiatric practice in her treatment of the decedent and whether that departure was a proximate cause of the decedent's injuries. Therefore, I dissent.
On January 14, 2015, Nicholas DeRosa (hereinafter the decedent) presented to the defendant Cherrywood Foot Care Group, P.C. (hereinafter Cherrywood), complaining of a "painful burn" to the top of his right foot caused by a heating pad. The decedent, who was 81 years old at the time and suffered from diabetes, had been a patient of Cherrywood since approximately 1999 and had a documented history of complications to both of his feet as well as peripheral vascular disease. The decedent was seen by the defendant Erica Papathomas, who diagnosed him with having suffered a second-degree burn and noted "intact serous blisters and areas of raw skin." Papathomas treated the decedent by applying Silvadene cream, which she directed the decedent to continue to apply daily, and by prescribing Augmentin, an antibiotic.
When the decedent returned to Cherrywood approximately one week later, on January 20, 2015, for a follow-up visit, he was again seen by Papathomas. Papathomas's notes from the January 20, 2015 visit indicate that she observed no sign of infection, and she continued the same treatment plan as had been previously prescribed—Silvadene cream and Augmentin—with a direction to follow-up again in one week's time.
The decedent returned to Cherrywood on January 31, 2015, where Papathomas again prescribed Silvadene cream and Augmentin, and also referred the decedent to a "wound clinic for [*3]possible [hyperbaric oxygen] treatments."
On February 6, 2015, the decedent presented to nonparty St. Joseph's Hospital (hereinafter St. Joseph's), which continued the application of Silvadene cream but also noted that the decedent's burn injury showed signs of "chronic ulcer," "degloving," "skin slough," and "necrotic patches." St. Joseph's also ordered "Vasc testing" as well as an X ray of the decedent's foot. The decedent returned to St. Joseph's on February 13, 2015, February 20, 2015, and February 27, 2015, for follow-up visits, and was directed on each date to continue to apply Silvadene cream. When the decedent returned to St. Joseph's on March 6, 2015, a "foul odor" was detected and he was advised to go to the emergency room, which he refused to do. When the decedent next presented to St. Joseph's on March 13, 2015, he was noted as being "ill-appearing" and "confused," and on this date his burn injury was diagnosed as being a third-degree burn with a venous stasis ulcer.
On March 19, 2015, the defendant presented to the emergency room of nonparty Plainview Hospital (hereinafter Plainview) where he was diagnosed with gangrene of his right foot. The decedent underwent an amputation of his right forefoot on March 24, 2015. On June 11, 2015, the decedent was admitted to Plainview with complaints of an "altered mental status" and "swelling in legs." The decedent suffered a heart attack while at Plainview on June 16, 2015, and died on June 24, 2015.
In August 2016, the plaintiff, as administrator of the decedent's estate, commenced this action against Cherrywood and Papathomas, alleging, inter alia, that Papathomas was negligent in her care of the decedent. Among other things, the plaintiff alleged that Papathomas was negligent in failing to properly diagnose and treat the decedent's burn wound, including by failing to prescribe "intravenous anti-biotic therapy," "debridement," and other "appropriate wound care treatment," including immediate referral of the decedent to a specialist or hospital for treatment when he first presented to her for treatment in January 2015. The defendants moved for summary judgment dismissing the complaint. In an order dated May 13, 2020, the Supreme Court denied the defendants' motion. The defendants appeal.
"To prevail on a motion for summary judgment in a medical malpractice action, a defendant must make a prima facie showing either that there was no departure [from accepted community standards of practice] or that his or her acts were not a proximate cause of the plaintiff's injuries" (Cerrone v North Shore-Long Is. Jewish Health Sys., Inc., 197 AD3d 449, 450). "Once this showing has been made, 'a plaintiff must submit evidentiary facts or materials to rebut the defendant's prima facie showing, so as to demonstrate the existence of a triable issue of fact'" (id. at 450, quoting Korszun v Winthop Univ. Hosp., 172 AD3d 1343, 1345). "'Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions' because '[s]uch conflicting expert opinions will raise credibility issues which can only be resolved by a jury'" (Cummings v Brooklyn Hosp. Center, 147 AD3d 902, 904, quoting Di Geronimo v Fuchs, 101 AD3d 933, 936; see Shields v Baktidy, 11 AD3d 671, 672).
Here, the defendants established their prima facie entitlement to judgment as a matter of law dismissing the complaint by submitting, inter alia, the affirmation of an expert who opined that there was no departure by Papathomas in her treatment of the decedent and that any departure was not a proximate cause of the decedent's injuries. In opposition, the plaintiff submitted, among other things, the affidavit of Jay Kerner, a board-certified podiatrist. In his affidavit, Kerner opined, among other things, that Papathomas departed from good and accepted podiatric practice in failing to properly diagnose the decedent with having suffered a third-degree burn and not a second-degree burn when he first presented to her office for treatment on January 14, 2015, and in failing to then immediately refer the decedent for appropriate treatment of his wound at an emergency room or a wound care clinic. Kerner explained that photographs of the decedent's burn injury taken on January 18, 2015, depict clearly visible necrotic tissue, ulceration, and degloving of skin which Papathomas failed to identify at any point during her treatment of the decedent; that the necrotic tissue, in particular, necessitated debridement; and that the decedent's underlying health issues, including diabetes and documented peripheral vascular disease, required Papathomas to consider aggressive treatment. Kerner further opined that Papathomas's failure to properly diagnose the decedent's burn [*4]and timely refer him for appropriate treatment, such as debridement of the necrotic tissue, "predisposed" the decedent to the infection which ultimately led to the partial amputation of his right foot, the stress of which Kerner opined caused the decedent to suffer a heart attack.
Contrary to the conclusion of my colleagues in the majority, Kerner's opinions were properly supported by competent evidence, including photographs of the decedent's foot, certified copies of the decedent's medical records, and a transcript of Papathomas's own deposition testimony, and were not conclusory or otherwise insufficient (see Schuck v Stony Brook Surgical Associates, 140 AD3d 725, 726; Gressman v Stephen-Johnson, 122 AD3d 904, 906; Berger v Hale, 81 AD3d 766). Moreover, although St. Joseph's initially continued the same course of treatment in February 2015 as had been provided by Papathomas, under the particular circumstances of this case, and given Kerner's opinion as to the need for more aggressive treatment, I find that Kerner's affidavit was sufficient to raise triable issues of fact as to whether Papathomas departed from good and accepted podiatric practice in her treatment of the decedent and whether that departure was a proximate cause of the decedent's injuries. In light of the conflicting expert opinions submitted here, I agree with the Supreme Court's determination to deny the defendants' motion for summary judgment. Accordingly, I would affirm the order appealed from.
ENTER:
Maria T. Fasulo
Clerk of the Court