**Lodato v New York City Health & Hosps. Corp.**

2024 NY Slip Op 30939(U)

March 20, 2024

Supreme Court, Kings County

Docket Number: Index No. 528154/2019

Judge: Consuelo Mallafre Melendez

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 7 of the Supreme Court of the State of NY, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 20th day of March 2024.

SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF KINGS

----------------------------------------------------------------------------X

VITO LODATO as the Administrator of the Estate of MARCO LODATO, deceased,

       Plaintiff,

  -against-

NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, NYU LANGONE HOSPITALS, NYU LANGONE HEALTH SYSTEM and NYU LANGONE HOSPITAL-BROOKLYN,

       Defendants.

----------------------------------------------------------------------------X

**AMENDED**
**DECISION & ORDER**

Index No. 528154/2019
 Mo. Seq. 2 & 3

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

NYSCEF #s: Seq. 2: 62 – 64, 65 – 86, 106, 107, 108 – 109
           Seq. 3: 87 – 88, 89 – 102
           Transcript of Oral Argument February 28, 2024

Defendant, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, moves this Court for an order pursuant to CPLR § 3212 granting summary judgment and directing entry of judgment to NEW YORK CITY HEALTH AND HOSPITALS CORPORATION (sequence 2). Plaintiff submitted opposition to this motion.

Defendants, NYU LANGONE HOSPITALS and NYU LANGONE HOSPITALS s/h/a "NYU LANGONE HOSPITAL-BROOKLYN" and NYU LANGONE HEALTH SYSTEM (hereinafter NYU Defendants), move this Court for an order pursuant to CPLR § 3212 granting summary judgment and dismissing the plaintiff's claims in their entirety against NYU Defendants

1

and directing entry of judgment to NYU Defendants (sequence 3). This motion is unopposed. Accordingly, the motion on behalf of NYU Defendants is granted without opposition, and all claims against NYU Defendants are dismissed.

This case involves treatment of Mr. Lodato at South Brooklyn Health, formerly known as Coney Island Hospital (hereinafter "NYCHHC") during his hospitalization from January 28, 2019 through to his discharge on February 7, 2019. Mr. Lodato was admitted to NYU Langone Hospital Brooklyn on February 8, 2024 less than 24 hours after he was discharged from Coney Island Hospital the day prior, where he was diagnosed with a gastrointestinal hemorrhage. At the time of his presentation to NYU, Mr. Lodato's bleeding could not be controlled and he passed away the same day at that hospital. Plaintiff claims that Mr. Lodato's personal injuries and death were due to NYCHHC's negligent and improper treatment of the patient's duodenal ulcer, NYCHHC's failure to appreciate objective signs of a gastrointestinal bleed, and a premature discharge of the patient from their facility. Plaintiff also alleges NYCHHC: (1) failed to obtain surgical and interventional radiology consults following the EGD on January 31, 2019 to monitor a re-bleed; (2) failed to perform serial CBC's on Mr. Lodato every 12 hours prior to discharge to monitor gastrointestinal bleeding and to diagnose a duodenal ulcer; and (3) failed to perform a repeat upper endoscopy to ensure the duodenal ulcer was appropriately treated.

"'In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries [internal citations omitted].'" *Hutchinson v. New York City Health and Hosps. Corp.*, 172 AD3d 1037, 1039 [2d Dept. 2019] citing *Stukas v. Streiter*, 83 AD3d 18, 23 [2d Dept. 2011]. "Thus, in moving for summary judgment, a physician defendant must establish, prima facie, 'either that there was no departure or that any

2

[* 2]

departure was not a proximate cause of the plaintiff's injuries.'" *Hutchinson*, 132 AD3d at 1039, citing *Lesniak v. Stockholm Obstetrics & Gynecological Servs., P.C.,* 132 AD3d 959, 960 [2d Dept. 2015]. "Expert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause [internal citations omitted]." *Navarro v. Ortiz*, 203 AD3d 834, 836 [2d Dept 2022]. "'When experts offer conflicting opinions, a credibility question is presented requiring a jury's resolution.'" *Stewart v. North Shore University Hospital at Syosset*, 204 AD3d 858, 860 [2d Dept. 2022] citing *Russell v. Garafalo,* 189 A.D.3d 1100, 1102, [2d Dept. 2020] [internal citations omitted]. However, "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise a triable issue of fact [internal citations omitted]." *Wagner v. Parker*, 172 AD3d 954, 966 [2d Dept. 2019].

Defendant NYCHHC's expert, Arnon Lambroza, M.D., a physician board-certified in internal medicine and gastroenterology, established that they are qualified to opine as to the care and treatment rendered to the patient at South Brooklyn Health, formerly known as Coney Island Hospital. Plaintiff's expert a physician board-certified in internal medicine and gastroenterology, established that they are qualified to opine as to the care and treatment rendered to the patient by defendants.

Defendant NYCHHC's expert opines defendant's plan to monitor the patient's blood counts every 12 hours and to transfuse, if necessary, in order to keep hemoglobin levels above 8.0 and the platelets above 50,000; avoid antiplatelets, anticoagulation, and administration of NSAID was proper and appropriate to ensure there was no further bleeding. The expert opines that monitoring the blood levels for a possible bleed was the standard of care. Further, the expert opines the doctors and staff at Coney Island Hospital monitored the patient as they recorded the patient's hemoglobin and hematocrit levels as stable, and their care plan was to continue current management.

3

[* 3]

Dr. Lambroza also opines Mr. Lodato's low hemoglobin and hematocrit levels on discharge from Coney Island Hospital on February 7, 2019 were stable for him as Mr. Lodato's baseline hemoglobin and hematocrit levels were well below the reference ranges as noted in the records from NYU-Brooklyn from December 2013 to May 2018. Moreover, Dr. Lambroza notes the patient's blood levels were tested on February 1, 2, 3, 4, 5, and 6, 2019 to monitor Mr. Lodato's hematocrit and hemoglobin levels and opines that the CIH physicians and staff appropriately followed the decedent's blood levels to ensure there was no further bleeding and the decedent's blood levels stabilized and were trending upwards with no sign of a further bleed for those seven (7) days. Dr. Lambroza also opines Mr. Lodato did not have any signs or symptoms of an abdominal perforation while in the care of Coney Island Hospital. Defendant's expert opines based on the foregoing it was appropriate to discharge Mr. Lodato on February 7, 2019.

Further, Dr. Lambroza opines a second look procedure was not necessary nor is it the standard of care in this case when there is no indication a patient is still bleeding. The expert opines a repeat upper endoscopy to ensure that the therapeutic approach employed (epinephrine injection, hemostatic clipping and cautery) effectively treated the duodenal ulcer prior to discharging Mr. Lodato is not the standard of care when the first EGD identified the source of the GI bleed, there was no active bleeding, and no fresh blood was found. Dr. Lambroza opines the patient had no indication of continued bleeding as there was no evidence of melena, no signs or symptoms consistent with a continued bleed, stable vital signs, and Mr. Lodato's hemoglobin and hematocrit levels were trending upwards. Dr. Lambroza notes the EGD report identified "one non bleeding cratered duodenal ulcer in the duodenal bulb with a non-bleeding visible vessel (Forrest Class IIA ulcer)." Further, the expert opines based on the first EGD there were no other sources of upper GI bleeding. Therefore, Dr. Lambroza opines a second look procedure was inapplicable here.

4

[* 4]

Based on the findings noted above, Dr. Lambroza opines none of the treatment rendered to Mr. Lodato at Coney Island Hospital from January 28, 2019 through February 7, 2019 was the proximate cause or a substantial factor in Mr. Lodato's injuries or death.

Upon the opinions set forth by NYCHHC's expert, Dr. Lambroza and the submissions in support of the motion, the court finds that the movants established their *prima facie* burden for summary judgment.

In opposition, Plaintiff's expert opines a "non-bleeding visible vessel (Forrest IIA) requires endoscopic therapy as the first therapeutic course of treatment followed by consultation from interventional radiology and surgery for further definitive treatment". The expert further opines "the presence of a visible vessel and its large ulcer size (30mm) suggested that there was a high probability of a re-bleed despite the therapy employed by Drs. Wagner and Trillo." Plaintiff's expert opines a surgical consult and interventional radiology consult were required for surgical definitive treatment in this instance as a re-bleed was likely with the large ulcer that had developed. The expert opines such failure to obtain a surgical and interventional radiology consultation for the patient following the performance of the EGD on January 31, 2019 was negligent and improper treatment of the duodenal ulcer and led to Mr. Lodato's re-bleed and death on February 8, 2019. The expert opines had the consultation taken place, the severity of Mr. Lodato's ulcer would have been appreciated to mitigate a re-bleed. Also, the expert opines Mr. Lodato had two ulcers and notes the chart has multiple entries identifying two ulcers, not only one.

Plaintiff's expert also opines the standard of care "for patients who are diagnosed with a large duodenal ulcer with a visible vessel is to monitor the H&H (hemoglobin and hematocrit) every 12 hours while they remain hospitalized." The expert elaborates on this by stating that the 12-hour check of the H&H values can identify whether there is development of a gastrointestinal

5

bleed as abnormally low values would indicate bleeding. Plaintiff's expert indicates that based on the MICU records on February 2, 2019, there was a GI recommendation to check CBC every 12 hours. (NYSCEF Doc. 77, page 57). The expert opines that despite this order, Mr. Lodato's CBC levels were taken every 24 hours and that this was a departure of the standard of care of the patient who was at high risk of a re-bleed. Specifically, the Coney Island Hospital record notes the last CBC was collected on February 6, 2019 at 9:56am and that Mr. Lodato was discharged on February 7, 2019 at 13:13. (NYSCEF Doc. 79, page 243; Doc. 77, page 2). Plaintiff's expert states that this record shows that the last H&H lab value was taken more than 12 hours since the last CBC collection. The expert opines that this indicates the defendants did not comply with the GI recommendation that CBC values be checked every 12 hours. Significantly, Plaintiff's expert also notes that the record indicates that on Mr. Lodato's last day of admission on February 7, 2019, his CBC was not tested. Thus, he opines that not checking the patient's H&H levels before discharge is another departure from the accepted standard of care and such failure was a factor in causing the patient's bleed and death.

Additionally, the expert opines Mr. Lodato's H&H values were abnormally low when collected after the procedure and if a CBC had been taken on February 7, 2019, the results would have been low enough to investigate a gastrointestinal bleeding source and the diagnosis of the duodenal ulcer would have been made prior to the ulcer's erosion which resulted in a hemorrhage and the patient's death. The expert notes Mr. Lodato's hemoglobin and hematocrit levels were abnormal throughout Mr. Lodato's hospitalization at Coney Island Hospital and this alone is objective evidence of a possible bleed. Furthermore, the expert opines had an investigation into gastrointestinal bleeding been made prior to his discharge Mr. Lodato could have undergone endovascular angiography or surgical intervention to treat the duodenal ulcer to prevent erosion of

[* 6]

the ulcer, a massive hemorrhage, and Mr. Lodato's death. Thus, Plaintiff's expert opines Mr. Lodato was prematurely and negligently discharged.

Plaintiff's expert opines defendant's failure to repeat an upper endoscopy to ensure that the endoscopic therapeutic treatment was effective in treating the ulcer with a visible vessel constituted a departure from accepted standard of care and was a substantial contributing factor to Mr. Lodato's demise. The expert opines the signs of erosion to the muscle layer would take days to progress and a second endoscopy would have revealed endoscopically the gravity of Mr. Lodato's condition before the ulcer perforated which caused the uncontrollable bleed that led to Mr. Lodato's death. Plaintiff's expert supports this opinion on the basis that 24 hours after plaintiff was discharged from Coney Island Hospital an emergent EGD at NYU found the same duodenal ulcer had eroded down to the muscle layer of the duodenum and there was questionable full thickness defect adjacent to a large and pulsating vessel.

Additionally, plaintiff's expert opines that another departure was that the gastroenterologists did not examine Mr. Lodato after February 1, 2019, and further, that he was discharged on February 7, 2019, not being examined by them. The expert also opines that Mr. Lodato was treated in the first instance in part because of maroon-colored stools on clinical exams and yet, after the first EGD the patient's stool was not evaluated for indications of blood. The expert opines evaluation of the patient's stool for blood would indicate a re-bleed. Based on the foregoing, plaintiff's expert opines NYCHHC had no objective evidence the endoscopic therapy was effective in treating the duodenal ulcer with a visible vessel and opines that not performing a second upper endoscopy prior to discharging Mr. Lodato was a departure from the accepted standard of care as it would have revealed the procedure was ineffective and would have prevented the patient's massive hemorrhage and death.

7

As discussed above, the expert opines in detail that these failures were substantial factors in causing Mr. Lodato's injuries and death.

Through the plaintiff's expert's affirmation, which is very detailed and non-speculative, issues of fact are raised as to defendant NYCHHC's liability and proximate cause of plaintiff's injuries and death. Plaintiff's expert raises an issue of fact with his opinion that a surgical consult and interventional radiology consult were required to comport with the standard of care as Mr. Lodato was at high risk of a re-bleed due to the Forest IIA ulcer found, which in his opinion has a high-risk bleeding recurrence. It is noted that defendant's expert, Dr. Lambroza does not opine on whether a surgical and interventional radiology consultation was the standard of care. On this question, Defendant's expert opines the standard of care was only to monitor the H&H levels which in this case were found to be stable and determined the continued course of treatment was to continue current management.

Assuming the standard of care was only to monitor the H&H levels, plaintiff's expert indicates there are no records to support that Mr. Lodato's CBC levels were checked every 12 hours. Plaintiff's expert opines the 12-hour monitoring would have identified a possible bleed and diagnosed a duodenal ulcer prior to discharging Mr. Lodato on February 7, 2019 and would have prevented Mr. Lodato's death. Dr. Lambroza does not opine specifically on whether the standard of care was to monitor the CBC levels every 12 hours or whether those levels could be tested more infrequently. This alone would be a departure from the standard of care and therefore constitutes an issue of fact. Further, Dr. Lambroza's opinion that NYCHHC discharged Mr. Lodato with below H&H levels stating that it was his baseline based on medical records from 2013 to 2018 is a retrospective analysis as Defendant NYCHHC did not have records of CBC lab values from 2013 to 2018 to form their opinion when they discharged Mr. Lodato on February 7, 2019.

8

Plaintiff's expert also refutes Dr. Lambroza's conclusion that the second endoscopy was not necessary or the standard of care as they opine that a repeat upper endoscopy remains the standard of care, and that had it been performed prior to Mr. Lodato's discharge on February 7, 2019 the procedure would have revealed a duodenal ulcer with a visible vessel. Based on the medical evidence in this case, Plaintiff's expert's opinion that the therapeutic approach treatment given to Mr. Lodato on January 31, 2019 by Drs. Tillo and Wagner was ineffective contradicts that submitted by Dr. Lambroza. There are also contradicting opinions as to whether the second endoscopy is the standard of care to identify signs of erosion of the ulcer prior to it perforating the muscle layer and causing his hemorrhage and death.

Based on the above, the court finds that Plaintiff's expert's opinions are well based on the facts and raise issues of fact as to whether the moving defendant departed from the standard of care and whether these departures were a substantial factor in causing the injuries and death to the decedent. Considering the foregoing conflicting opinions, which are detailed and not speculative, summary judgment is denied as all claims sounding in medical malpractice relating to defendants NYCHHC. "In order not to be considered speculative or conclusory, expert opinions in opposition should address specific assertions made by the movant's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record". *McHale v. Sweet*, 217 AD3d 666, 668 [2d Dept 2023] quoting *Templeton v. Papathomas*, 208 A.D.3d 1268, 1270 – 1271 [2d Dept 2022][internal quotation marks omitted]; see also *Tristan v. New York Community Hosp.*, 154 A.D.3d 994, 996 [2017]. "Summary judgment is not appropriate in a medical malpractice action where, as here, the parties adduce conflicting medical expert opinions. 'Such credibility issues can only be resolved by a jury.'" *Castillo v. Surasi*, 181 AD3d 786, 788 -789 [2d Dept 2020], citing *Feinberg v. Feit*, 23 A.D.3d 517, 519 [2d Dept. 2005].

9

[* 9]

In reference to the claim of lack of informed consent, Defendant NYCHHC established their *prima facie* entitlement to summary judgment through their expert's affirmation, which is detailed and non-speculative. However, Plaintiff's expert does not mention the claim of informed consent in their affirmation and it is therefore, unopposed. As such, the motion for summary judgment on this cause of action must be granted. "Where a party fails to oppose some or all matters advanced on a motion for summary judgment, the facts as alleged in the movant's papers may be deemed admitted as there is, in effect, a concession that no question of fact exists." *144 Woodbury Realty, LLC v. 10 Bethpage Rd., LLC*, 178 A.D.3d 757, 761-62 [2d Dept 2019].

Accordingly, NYU Defendants' motion for Summary Judgment is GRANTED; and NYCHHC Defendant's motion for Summary Judgment is GRANTED ONLY TO THE EXTENT that Informed Consent is dismissed; and it is DENIED in all other respects.

The Clerk is directed to enter judgment in favor of NYU LANGONE HOSPITALS and NYU LANGONE HOSPITALS s/h/a "NYU LANGONE HOSPITAL-BROOKLYN", and NYU LANGONE HEALTH SYSTEM.

This constitutes the decision and order of the court.

**ENTER.**

_____
**Hon. Consuelo Mallafre Melendez**
**J.S.C.**

10

[* 10]